. **UNITED STATES of America,**
**Appellee,**

v.

**William Francis COLLINS, Appellant.**

**No. 12748.**

United States Court of Appeals
Fourth Circuit.

Argued May 6, 1969.

Decided Sept. 15, 1969.

Certiorari Denied Jan. 12, 1970.
See 90 S.Ct. 601.

Denis K. Lane, Alexandria, Va., Court-appointed counsel, for appellant.

Alan I. Baron, Asst. U. S. Atty. (Stephen H. Sachs, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and WINTER, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

Guilt on three counts of bank robbery, 18 U.S.C. § 2113, was found against William Francis Collins by a jury, April 18, 1968, in the District Court of Maryland, and he now appeals the judgment and sentence upon the verdict. Failure in his identification is the salient of the attack.

Nobody who took the witness stand could say that the appellant, then in the courtroom, was recognizable as the one who at gunpoint, about two o'clock in the afternoon of December 8, 1965, robbed the Lincoln Federal Savings and Loan Association in Hyattsville, Maryland. Reliance for identification was rested on the evidence of three eyewitnesses—two employees and a repairman in the bank at the time—who testified by reference to photographs of a lineup that included Collins. The pictures were taken June 28, 1967, the day of Collins' arrest. One of these three witnesses was present at the lineup. The other two witnesses were not at the lineup but had picked out Collins from these photographs. There was another eyewitness to the holdup who was also at the lineup, but she was called by the defense. Between the date of the photographs and the trial in April 1968, Collins had lost about 75 pounds in weight, dropping from 250 to 175.

Referring to the pictures, the witness to the lineup showed to the jury the person whom he had there indicated to be the robber. The two witnesses who had not been at the lineup pointed out for the jury the person whom they had previously named in the pictures. Thereafter it was proved that each of the three witnesses' selections was Collins. Failure of the courtroom identification, the prosecution maintained and apparently the jury believed, was due to Collins'

loss of almost one-third of his prior weight.

Appellant bears down on both the composition of the array and all use of the pictures as wronging him in his Fifth and Sixth Amendment privileges. Due process was refused, he says, because as arranged the lineup was unfair. Want of counsel at the lineup and at the private pretrial exhibition of the pictures was the asserted Sixth Amendment infringement. See United States v. Wade, 388 U.S. 218, 232–234, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ The arrest of Collins for this Maryland offense and the lineup occurred in the District of Columbia, June 28, 1967, more than 18 months after the crime. The lineup was constituted of Collins and five others, who were ununiformed policemen. The confrontation of Collins and his viewers is branded as unfair because his features and dress told on him. All of the group were Caucasians but the tattling characteristics alleged were these: the accused had a ruddy complexion with broken red and purple veins with large skin pores, while the others were dark complected; several of the company were plainly older than he; all of his counterparts had what could be well described as "the usual" in dress and manner of police officers; Collins wore a light blue shirt and "shiny or silky black pants" as contrasted with the "conventional white shirts and trousers" of the rest. The lineup was conducted by a police officer and an FBI agent.

On defendant's objection to the pretrial and proposed identifications, the trial judge, before the evidence of any witness was received and in the absence of the jury, went into the circumstances of each witness' first and present determination, whether by the lineup or the photographs, or both. This process was applied separately with all three of the prosecution's identity witnesses. Un-

sparing scrutiny was pressed for discovery of any coaching. Opportunity was accorded the defendant to adduce evidence of infirmity in the lineup, or in the original or current production of the photographs before the absent witnesses. His counsel freely cross-examined. Only after the court was satisfied of the legality of the lineup and of the complete spontaneity in a witness' decision, either at the lineup or upon the pictures, was his evidence permitted to go to the jury. There was no wholesale inquisition, only a simple one-by-one examination.

The fourth or remaining eyewitness, called by the defendant, testified without such preliminary voir dire. On direct, she expressed an inability to settle on the robber at the lineup or from the picture. On cross-examination she confirmed that before trial she had put her finger on both Collins and the man next to him as looking like the robber. ·

With the District Judge, we see no telling variation from Collins' appearance, in the dress, age, height, weight or other features of those in the lineup, as would mark him as a nonconformist. Nor was he so positioned in the line as to disclose his part in the cast; nor was there taint by hint or other sign to the witnesses for their choices. In short, nothing about the assembly deprived the accused of due process.

■ The Sixth Amendment rights of the defendant, too, were scrupulously honored. Alert and astute counsel represented Collins at the lineup. He had not then been indicted, or removed to Maryland, but attorneys from the Legal Aid Society of the District of Columbia attended in his behalf. Throughout the proceeding, they were consulted by those in charge, and voiced no exception. Additionally, the United States Attorney for the District of Columbia came in person. This special solicitude doubtlessly was attributable to the recent opinions in United States v. Wade, supra, 388 U.S. 218, 87 S.Ct. 1926, and Gilbert v. California, supra, 388 U.S. 263, 87 S.Ct. 1951. Thus conscientious and diligent observance was paid to the

Sixth Amendment as focused by those decisions. Hence, the identification by the lineup was not challengeable.

■ There remains the issue of fairness in the identification by the two witnesses who were not at the lineup. Under this head, the first inquiry is whether in the tender of the pictures to them, either was intentionally or inadvertently prompted to blame Collins. There is no intimation of it in the record.

The next ascertainment, then, is whether the cases just cited bar identification by the display of photographs of the lineup to the witnesses in the absence of counsel for the suspect. If this is permitted, appellant protests, the creed of *Wade* and *Gilbert* could easily be circumvented by resort to photographs in lieu of the lineup itself. Whatever its force elsewhere, in our judgment the circumstances here do not justify laying the accusation of heresy upon the tenet of the District Court.

*Wade* and *Gilbert*, supra, demand the presence of counsel for a valid lineup identification because of the inherent threats to preservation of a suspect's rights in such a congregation of persons —witnesses, members of the lineup and onlookers. The chances for suggestive imputations are unrestrained or unrestrainable. Alone, and perhaps inexperienced, he cannot comparably defend himself against the abuse or be assured of fairness. Wade, 388 U.S. at 228–232, 87 S.Ct. 1926. These potentials of danger—graphically described in the opinions—and the inability to reconstruct them at the trial in impeachment of the identification, obviously account for the classification of this kind of confrontation as a "critical stage" of the prosecution.[1] Counsel at that point was prescribed as an absolute canon of the procedure.

But presently the fears of *Wade* and *Gilbert* anent the absent or photograph-

viewers are forestalled, for the most part, by the proof that the lineup was impartial. The only remaining concern is the possibility that the exhibitor clued the witness. A violation in that respect would, of course, be a denial of due process. The question, then, is whether under *Wade* and *Gilbert* the presence of counsel was mandatory—to insure against a breach of due process—when the pictures of the lineup are first laid before the lineup absentees. We think these precedents do not go so far.

These authorities do not condemn all identifications not made through a lineup. That is not the lesson of *Wade* and *Gilbert*. The Court there dealt with inescapable features of a lineup, and its demand for counsel was unconditional solely because of these unavoidably indwelling and peculiar circumstances. It did not pretend to outlaw, per se, those means of identification which are not fraught with these or like potential dangers.

Where, as here, the identification was preceded by photographs of a lineup which had been safeguarded by the surveillance of counsel, and consisted of a display of the photographs under conditions not embracing the apprehensions of a lineup, counsel was not adamantly required by *Wade* and *Gilbert*.

Although a non-lineup identification, conceivably, could in circumstances be vitiated by the absence of counsel, no imperilling circumstance is evident here. The criterion for this determination is expressed in Stovall v. Denno, supra, 388 U.S. 293, 302, 87 S.Ct. 1951, 1972, 18 L.Ed.2d 1178 where it is said:

"However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, * * * *"

In Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), while the accused did not

---

1. That the lineup in the case before us was ante-indictment gives no ground, we think, for distinction in assessing the meaning of *Wade* and *Gilbert* which were post-indictment situations.

assail the identification because of the lack of counsel, the Court upheld identification without a lineup and through photographs seen pretrial by the witnesses to identity. The holding is compressed in this paragraph of the Court:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that *each case must be considered on its own facts,* and that convictions based on eyewitness identification at trial following pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 18 L.Ed.2d 1199, and with decisions of other courts on the question of identification by photograph." (Accent added.)

The instant circumstances reveal no such impermissiveness. The two witnesses who saw the photographs only were not reasonably available at the time of the lineup. They were separately shown the pictures. The evidence does not even insinuate the giving of help or cue to them to inculpate Collins. Indeed, the very thought is dispelled by one of them when she saw both Collins and another as the possibly guilty man.

In sum, there was no error in the rulings of the District Judge letting the jury have the identification testimony. The other assignments of error have likewise been found unsustainable. As the verdict was warrantable on the evidence and was well within the law, it cannot be disturbed.

Affirmed.

WINTER, Circuit Judge (dissenting):

In dissent in United States v. Marson, 408 F.2d 644 (4 Cir. 1968), I had occasion to express my views on the applicability of the *Wade* and *Gilbert* decisions to identifications made from photographs *after* an accused is in custody. This case presents another aspect of the same issue.

Collins was not taken into custody until a year and a half after the bank robbery with which he was charged. Between the time he was taken into custody and his trial, he lost approximately 75 pounds. Perhaps for this reason, at his trial three government witnesses who had observed the robbery were unable to identify him, but one of the three was permitted to testify that he had identified Collins at a corporeal lineup at which Collins' counsel were present. The other two were permitted to testify that they had identified Collins, at a date subsequent to the corporeal lineup, from a photograph taken of it.

While the district judge made some exploration of how the photographic identification procedure was conducted, not all of the circumstances were disclosed. The witnesses denied that their identification had been consciously influenced or that they were aware of any suggestiveness on the part of the government agents. But the record is silent as to whether either of Collins' counsel was present. Mere silence in this regard would support the inference that he was not, but, in any event, consistent with *Wade,* it must be assumed that counsel was absent unless the contrary were shown. The record provides no explanation of why Collins was not exhibited in person to the two witnesses

who made a photographic identification: (a) there is no satisfactory explanation why one of these two witnesses was not present at the corporeal lineup which was held, and (b) more importantly, the record contains no explanation why the government could not have conducted a second corporeal lineup for these two witnesses at a time convenient for them. The record is also silent as to whether the witnesses were shown any photographs other than the one in which Collins appeared as the only person in a colored shirt and shiny trousers, or what procedure was followed in exhibiting to them the one or more photographs that they examined.

I would conclude, under the circumstances of this case, that the photographic lineup was a "critical" stage at which Collins, under *Wade*, was entitled to be represented by counsel. Because of the inability of any witness to make a courtroom identification, the issue of identification was determined principally at the photographic lineup. Yet, there, Collins was unrepresented. Short of conscious and purposeful influence, which the witnesses denied, the circumstances of the witnesses' photographic identification may have been such as to exert unconscious influence on them. They may not have been alert to this possible suggestiveness—purposeful or inadvertent—but, once having identified Collins, they would be quite loath to recant. Even though the photograph was available, the ability of counsel to reconstruct what occurred at the lineup was so seriously impaired that it is unlikely that he could have brought to light at trial any of these possibilities of misidentification.

Aside from the possibility of unconscious influence or suggestion, the greater reliability of an identification based upon a person-to-person confrontation ought not to be so lightly sacrificed in the absence of a compelling explanation why confrontation under the circumstances of the case was not possible. Photographic identifications, in particular, have proved to be an unreliable and insecure basis for correct identifications, and underlying *Wade* and *Gilbert* is the Supreme Court's concern for the reliability of eyewitness identifications in general. See also, Simmons v. United States, 390 U.S. 377, 385–386 & n. 6, 88 S.Ct. 67 & n. 6, 19 L.Ed.2d 1247 & n. 6 (1968). I repeat that this record is devoid of any purported justification for the sacrifice.

I disagree with the majority that *Simmons* has relevance to this case. I do not read *Simmons* as modifying the application of *Wade* and *Gilbert* to post-custody identifications as I read the majority's opinion to suggest. Simmons was not in custody at the time of the identifications made from photographs. Simmons v. United States, 390 U.S. at 384–385, 88 S.Ct. 967, 19 L.Ed.2d 1247. In the instant case Collins was in custody and a corporeal lineup had been held. This is the crucial distinction between *Simmons* and the instant case. As Mr. Justice Harlan explained in his opinion for the Court in *Simmons*, photographic identifications prior to arrest serve the important functions of aiding in the apprehension of offenders still at large and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them. Neither of these functions can be fulfilled once a suspect has already been taken into custody. See also, United States v. Marson, 408 F.2d 644 (4 Cir. 1968).[1]

I do not now concern myself with the effect of 18 U.S.C.A. § 3502 (1969 Ed.). By a literal reading, it may not be ap-

---

1. In passing I note that two factors present in *Simmons*, which served as a basis of decision, are also conspicuously absent here. In *Simmons* the photographic identifications occurred one day after the robbery while the witnesses' impressions and recollections of what they had seen were fresh, and each witness was able to make a courtroom identification at trial. These facts alleviated the Court's concern for the reliability of photographic identifications. By contrast, the photographic identifications here were made 18 months after the event and neither witness could make a courtroom identification.

plicable to testimony of the fact of previous identification, as distinguished from a courtroom identification. More importantly, the government does not advance it as a ground for affirmance; and, until fully briefed and argued, I would not deal with the troublesome question of the validity of the statute. See, Note, Title II of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Harvard L.Rev. 1392 (1969).

I would reverse and grant a new trial.[2] I respectfully dissent from the majority's different conclusion.

---

2. In *Wade* the relief granted was remand for an evidentiary determination of whether the courtroom identification was tainted by the absence of counsel at the critical lineup. That relief would be inappropriate where, as here, two of three witnesses testifed solely as to their identification of Collins at the photographic lineup. Rather, the disposition is governed by *Gilbert* where, in addition to an in-court identification, there was also testimony of the fact of identification at a pre-trial lineup.