**UNITED STATES of America**

v.

**Willie S. KING, Appellant.**

**No. 24381.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 28, 1971.

Decided March 6, 1972.

Mr. Lawrence J. Winter, Washington, D. C. (appointed by this court) for appellant.

Mr. Robert J. Higgins, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and John F. Evans, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and McGOWAN and TAMM, Circuit Judges.

TAMM, Circuit Judge:

Appellant, and a co-defendant, Fred D. Smith, were convicted by a jury on three counts of armed robbery and four counts of assault with a dangerous weapon.[1] Urging defective identification procedures, appellant invokes the jurisdiction and aid of this court. Having carefully considered all the arguments made by appellant, we affirm the conviction for reasons hereinafter set forth.

In the early evening of January 4, 1969, six men,[2] some of whom were armed, robbed a Safeway store in Northwest Washington. Among the witnesses to the event were Norman L. Creel, Jr., the store manager, and three Safeway employees, Julius Hobson, Jr., Duane E. Wilkes and Charles Pernell. The following morning Mr. Creel and Mr. Wilkes were summoned to the police station where they were shown 200 to 300 photographs. Creel tentatively identified appellant and Fred Smith from these photographs. (Tr. 42.) Although Wilkes "had an idea" as to the identity of one of the robbers he was not "absolutely positive." (Tr. 119–20).[3] Two days later, while at the Court of General Sessions (now Superior Court) on an entirely unrelated matter, Mr. Creel saw appellant and Smith. He immediately notified a detective who then ascertained their identities. A week later Creel again identified appellant and Smith from a group of about forty photographs shown to him by a police detective. Once more, on January 28, both men were identified by Mr. Creel from a nine-man corporeal counseled lineup.[4]

On the morning of the trial, March 16, 1970, the prosecutor indicated to the court that in addition to Mr. Creel, several other witnesses, namely Mr. Hobson, Mr. Wilkes and Mr. Pernell had informed him that they too could identify appellant. (Tr. 9.) The prosecutor stated that because of the lapse of time since the crime,[5] and because these other witnesses had not previously identified appellant or attended a lineup, he felt it would be fairer to appellant if he showed these other witnesses, prior to trial, in the presence of appellant's counsel, a photograph of the lineup which Mr. Creel had attended, rather than merely limiting the identification to a face to face confrontation in court.

1. D.C.Code §§ 22–3202, 22–502 (1967).

2. The other four men in the robbery were never identified.

3. The photograph of appellant had been taken on June 9, 1965, or some three and one-half years prior to the date of the robbery. Mr. Smith's picture had been taken two years before the robbery. (Tr. 125–26.)

4. Inadvertently, Mr. Hobson had not been asked to attend the January 28 lineup.

Mr. Hobson along with Mr. Creel did attend a lineup on February 4 in which neither appellant nor Smith was a participant.

5. During oral argument, we asked the government to file a supplemental memorandum on the issue of speedy trial. Having carefully considered its contents, we find nothing which compels us to reverse.

Over appellant's objection, these witnesses were shown the photograph. Both Mr. Hobson and Mr. Wilkes positively identified appellant. Mr. Pernell said appellant "resembled" the robber, but he could not be "positive." (Tr. 28.)

Following the photographic identification, the district judge conducted a *Wade-Stovall* hearing wherein Mr. Hobson testified that, although he had not seen appellant since the robbery, he was "certain" that appellant was one of the robbers. In support of his conclusion, Hobson stated that he had looked at appellant from a distance of "no more than 4 feet" under "very good" lighting conditions for "a minute or a minute and a half." (Tr. 108–10.) Mr. Wilkes echoed these statements. He too was "certain" that appellant was one of the robbers. (Tr. 110.) His belief was based upon a view of appellant at a distance of no more than "eight feet" for "a minute and one-half or two minutes." (Tr. 117–18). Having heard the evidence adduced at the hearing, the learned district judge denied appellant's motion to suppress the identification testimony of Mr. Wilkes and Mr. Hobson as well as that of Mr. Creel. (Tr. 140.) [6]

At trial Mr. Creel, Mr. Hobson and Mr. Wilkes identified appellant in court. At the conclusion of the trial, both appellant and Smith, his co-defendant, were found guilty by the jury.

The sole issue presented to us on appeal is whether the exhibition, in the presence of counsel, of a photograph of a formal counseled lineup, to two witnesses on the day of the trial is a violation of due process.

■ The standard set forth to guide us in the resolution of this issue is found in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), where the Supreme Court stated:

> We hold that each case must be considered on its own facts, and that con-

victions based on eye-witness identification at trial following a pretrial identification by photograph will be set aside on that ground *only if* the photograph identification procedure was *so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Id.* at 384, 88 S.Ct. at 971. (Emphasis supplied). The Court further indicated that any claim of suggestiveness must be "evaluated in light of the totality of the surrounding circumstances." *Id.* at 383, 88 S.Ct. at 970. Applying this test to the instant case we find no reason for disturbing the decision below.

A photograph is a moment captured for eternity. It stands immutable against the chameleonic vicissitudes of life. Since no question is raised as to the validity of the corporeal lineup itself, the photograph of that very lineup remains unassailable unless there exists some infirmity in the exhibition of the photograph to the witnesses. *See* United States v. Brown, No. 24,452, 149 U.S. App.D.C. ——, 461 F.2d 134 (1971) (opinion filed March 1, 1972); United States v. Collins, 416 F.2d 696 (4th Cir. 1969). Clearly, the instant circumstances surrounding the showing of the photograph indicate no such unfairness. While the two witnesses had not previously participated in the counseled lineup, they were shown the photographs separately and in the presence of appellant's counsel. The entire process was devoid of any hint of suggestiveness.

However, appellant urges that the timing of the photographic exhibition was fatal. He argues that to show the photos on the morning of the trial, fourteen months after the robbery, results in an "in-court identification of the appellant [which] would not have been arrived at independent of [the] improper [reinforcing] photographic identification." Brief for Appellant at 6.

■ We do not think that the photographic showing in this case was ren-

---

6. Since Mr. Pernell did not positively identify appellant, he was not permitted to testify on the identification issue. (Tr. 140.)

dered invalid as a matter of due process by the mere lapse of time between the showing and the original opportunity to observe; and thus the District Court did not err in holding that the in-court identification was admissible. Timing, a matter which normally goes to the weight of the evidence and credibility of the witness, not the admissibility of an identification, is within the jury's province. *See* Foster v. California, 394 U.S. 440, 442 n.2 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); United States v. Brown, *supra* (upholding photograph exhibition to witness two weeks prior to trial); United States v. Roth, 430 F.2d 1137, 1140 (2nd Cir. 1970) (upholding photograph exhibition to witness during recess of trial); United States v. Munroe, 421 F.2d 644, 645 (5th Cir. 1970) (upholding in-court identification after time lapse); United States v. Baker, 419 F.2d 83, 90 (2d Cir. 1969), cert. denied, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970) (upholding photograph exhibition to witness 10 days prior to trial); United States v. Collins, *supra* (upholding photograph exhibition to a witness 18 months after the crime). The jury was fully aware of the nature and timing of the photographic identification to assist it in weighing the witnesses' testimony. The jury has spoken. We must abide by its decision.

■ Appellant also argues that he was entitled not only to the corporeal lineup which he received before witness Creel, but also to one before witnesses Hobson and Wilkes immediately after the arrest. He asserts such a result is the necessary conclusion of our holding in Adams v. United States, 130 U.S. App.D.C. 203, 399 F.2d 574 (1968).

We first note that appellant's reliance upon *Adams* is misplaced. Although we pointed out in our opinion a means by which the Government might arrange prompt and efficient lineups, the holding of the case was to invalidate a lineup identification which was the fruit of delay in presentment.

Secondly, we note that no court has ever held there is an absolute constitutional right to a corporeal lineup. *See* United States v. Ash, 149 U.S.App.D.C. —— at ——, 461 F.2d 92 at 113 (1972) (Wilkey, J., dissenting); United States v. Hamilton, 137 U.S.App.D.C. 89, 91, n. 11, 420 F.2d 1292, 1294 n.11 (1969); Kennedy v. United States, 122 U.S.App. D.C. 291, 295, 353 F.2d 462, 466 (1965); United States v. Munroe, *supra*; United States v. Ravich, 421 F.2d 1196, 1202–1203 (2nd Cir. 1970). Certainly in the circumstances of this case, including the photographic showing in the presence of counsel, we do not think the failure to hold a corporeal lineup transgresses the due process clause.

It is clear from the record that the purpose of the prosecutor's offer of a photographic identification prior to trial was to assist appellant. In view of the fact that there was a considerable lapse of time since the crime and because witnesses Wilkes and Hobson had not previously identified appellant or attended a lineup in which appellant was involved, the prosecutor thought it would be fairer to appellant if the witnesses were shown photographs of the lineup prior to trial rather than relying solely upon an in-court identification. His reasoning was twofold. First, he feared the inherent suggestiveness of an in-court identification where a defendant is conspicuously seated at counsel table in relative isolation. Second, should any of these witnesses have been unable to identify appellant at the photographic identification, the prosecutor stated he would have moved for a dismissal on as many as 18 counts of the indictment. (Tr. 11–12).[7]

7. In relation to witnesses Wilkes and Hobson it is clear that the traditional reasons for a lineup—*i. e.,* apprehending offenders and sparing innocent suspects the ignominy of arrest—are inapplicable since appellant was already in custody when the photograph was viewed. However, this is not fatal. *See* United States v. Collins, 416 F.2d 696 (4th Cir. 1969); People v. Lawrence, 4 Cal.3d 273, 93 Cal.Rptr. 204, 481 P.2d 212 (*en banc* 1971).

The motivation of the prosecutor was clearly to assist appellant. Indeed, in spite of the fact that he believed a pretrial photographic identification fairer to appellant, he offered to forego it and rely exclusively on an in-court identification if that was appellant's wish. His suggestion passed without comment from defense counsel.

[Prosecutor]: If I may be heard, I might suggest this alternative, if this would be more acceptable to [defense counsel]. I have suggested the lineup because it was my own personal feeling that that would afford Mr. King more due process. But I know of no case in the country that would prevent me from now calling either one of these three men in a pretrial hearing and have a face to face confrontation with Mr. King in the Court room, and subject him to cross-examination by [defense counsel] and see whether or not in a face to face confrontation, the witness can identify Mr. King in Court under the scrutiny of this Court and under the cross-examination of [defense counsel].

(Tr. 17.) Appellant now seeks to convert this additional protection offered into a source of reversible error; this, we shall not permit.

■ This court is cognizant that the problems arising on this appeal could have been obviated had the police department performed more effectively. The lineup division of the police department does a generally commendable job in what is a most difficult area of law enforcement. However, we would make the following observations in the hope that their efforts can be improved upon. First, the police should exert greater effort in the coordination of lineups. All relevant witnesses should be apprised of the times and places of lineups. They should be personally contacted immediately after the crime and immediately before the lineup. This is a time-consuming task, but a necessary concomitant of orderly justice. Second, mindful of the often difficult task of coordinating defense attorney schedules and the reluctance of some witnesses to appear at a lineup, we again reassert our firm belief that prompt lineups are the most reliable ones. We exhort the police to do all within their power to bring this belief to fruition.

■ Admittedly, the police could have employed better procedures in the conduct of this case, but our inquiry is not whether better methods were available, but whether the one utilized was fair. Considering the totality of circumstances surrounding this case, we find that the photograph identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

Affirmed.

BAZELON, Chief Judge (concurring):

Although I concur in the affirmance of King's conviction, I emphasize that it is unnecessary to rest our decision in whole or in part on our recent *en banc* ruling in United States v. Brown, No. 24,452, 149 U.S.App.D.C. ——, 461 F.2d 134 (1971) (opinion filed March 1, 1972.) I was unable to join in *Brown* because I share Judge Wright's view that "pretrial photographic identifications—even where the photograph involved is of the lineup itself—are, like lineups, a critical stage of the prosecution at which the accused is constitutionally entitled to the assistance of counsel." 461 F.2d at 151 (Wright, J., dissenting). Even though the photograph at issue here was of a lineup, the crucial difference from *Brown* is that here counsel was present when the photograph was displayed to the witnesses.

Given the presence of counsel (and absent any claim of ineffective assistance of counsel), King cannot assert a violation of United States v. Wade, 388 U.S. 218, 87 S.Ct. 218, 18 L.Ed.2d 1149 (1967). There remains, however, the possibility of an objection under Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), on the theory that

the identification—notwithstanding the presence of counsel—was so unduly suggestive as to deny the defendant due process.

In support of his *Stovall* claim King points to the delay of fourteen months between his arrest and the identification at issue here, and he argues that his defense was prejudiced because the photograph was displayed to the witnesses immediately before trial. The majority finds no error, and indicates that "[t]iming, a matter which normally goes to the weight of the evidence and the credibility of the witness, not the admissibility of an identification, is within the jury's province. * * * The jury was fully aware of the nature and timing of the photographic identification to assist it in weighing the witnesses' testimony. The jury has spoken. We must abide by its decision." 461 F.2d at 155.

In my view, the majority's answer misses the point of King's contention. Where witnesses are able to identify a suspect from a lineup photograph fourteen months after the commission of the crime, the jury is obviously going to place great weight on the identification and the defendant will be hard pressed to argue that the passage of time has dimmed the memory of the witnesses. What appellant fears—and it seems to me a very realistic source of concern—is that the process of identification is likely to be most suggestive when the government has postponed it until the eve of trial. At that point the prosecution has the greatest incentive to influence, consciously or unconsciously, the witnesses' conclusions. *See* United States v. Brown, *supra,* 149 U.S.App.D.C. at ——, 461 F.2d at 147 (Bazelon, C. J., dissenting). And where an identification is made after a fourteen month delay, it may be possible to infer from its apparent implausibility that it must have been predicated on some suggestivity so subtle that defense counsel could not detect it. These are clearly questions for the court, not the jury.

In some cases the inference drawn from the improbability of the identification could lend weight to other indicia of suggestivity, thereby requiring exclusion of the identification under the principle of *Stovall.* But since the record in this case reveals no other evidence of suggestivity and since the improbability of the identification is not so great as to compel an inference of impropriety, I would conclude—as a matter of law—that *Stovall* does not bar the admission of this identification at trial.

There remains, however, a further problem—one to which *Stovall* was not addressed. Dissenting in *Brown,* I pointed out that we have systematically shut our eyes to all of the shortcomings and trouble spots of the identification process. 149 U.S.App.D.C. at ——, 461 F.2d at 145, n 1. Data already available (to which I referred in *Brown*) suggests that identifications based on a brief glimpse of the assailant in the confused atmosphere of a crime may frequently be unreliable. And the dangers of unreliability seem significantly increased where the witness and the suspect are of different races. *Id.* Yet we have tried to sweep this cluster of very troublesome problems under the rug by insisting—as in the majority opinion here—that the jury is capable of handling the difficulties that may arise. That insistence is not supported by reference to information or reasoning. And we do not even take the trouble to provide the jury with meaningful information about the pitfalls of the identification process. (The vacuous and unhelpful jury instruction which is occasionally offered is surely no exception.[1])

---

1. *See* Junior Bar Section of the Bar Assoc. of the District of Columbia, Criminal Jury Instructions for the District of Columbia, No. 126 (1966):
Mistaken Identity

The burden is on the Government to prove beyond a reasonable doubt, not only that the offense was committed as alleged in the indictment, but also that the defendant is the person who

As a result, our confidence in the jury's innate ability to handle the problem does not even reflect good common sense.

Clearly, much more is at stake here than a "technical" violation of law. The question, after all, is not whether the constable stumbled, but whether the defendant is actually guilty. I do not see how we can turn over to the jury this critical question without even trying to acquaint it with the risks involved or the information now available that could illuminate its inquiry. *Compare* United States v. Bennett, 148 U.S.App.D.C. —, 460 F.2d 872 (1972); Washington v. United States, 129 U.S.App.D.C. 29, 390 F.2d 444 (1967).

In any case, the entire problem could have been avoided, as the majority points out, if the suspect had been displayed to all of the witnesses at a prompt lineup. I am convinced that the government has no defensible interest in postponing an identification for as much as fourteen months. Indeed, in explaining the situation to the judge at the outset of trial, the prosecutor stated:

> Your Honor, in this case, very frankly, the work of the police department, perhaps in part because of the dereliction on the part of the police department, but perhaps also in part because of the very overloaded schedule of the police department, has resulted in three people that say now they think they can identify [King]. * * * They have never attended a lineup in which he was present.

Transcript at 8–9. The photograph of a lineup held fourteen months earlier was then displayed to the three witnesses and two of them were able to identify King. There is no excuse for compelling a court to resolve this problem by wrestling with inferences; this case makes plain the need for a prophylactic rule barring the introduction of needlessly postponed identifications.

committed it. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him.

If the circumstances of the identification are not convincing beyond a reasonable doubt, you must find the defendant not guilty.