UNITED STATES of America

v.

William C. HURT a/k/a Charles W. Hurt, Appellant.

UNITED STATES of America

v.

Robert L. HUFF, Appellant.

Nos. 72–1015, 72–1016.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 11, 1972.

Decided March 21, 1973.

---

Erwin G. Krasnow, Washington, D. C., with whom Michael Yourshaw, Washington, D. C. (both appointed by this court), was on the brief, for appellant in No. 72–1015.

William W. Beckett, Washington, D. C. with whom James A. Sheridan, Washington, D. C. (both appointed by this court), was on the brief, for appellant in No. 72–1016.

Joseph E. di Genova, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before McGOWAN, Circuit Judge, HARRISON L. WINTER,* Circuit Judge for the Fourth Circuit, and MacKINNON, Circuit Judge.

PER CURIAM:

Appellants William C. Hurt and Robert Huff were indicted for first degree murder (D.C.Code § 22–2401) and convicted of second degree murder (D.C. Code § 22–2403) after a joint trial. We have consolidated their appeals, and for the reasons expressed below affirm both convictions.

## I.

On August 21, 1970 at approximately midnight Richard Mitchell was stabbed to death in the parking lot of the Golden Gate Lounge at 8th and K Streets, N.W. by two assailants. There were at least four witnesses to the stabbing—Nathaniel Black, Charles Thomas, Patricia Tierney and Diane Evans, all of whom viewed the incident from approximately 30 feet. The police arrived at the parking lot at 12:30 a. m. and broadcast a radio "lookout" for the two suspects at approximately 12:55 a. m. The radio "lookout" described the two suspects as Negro males, one 6 feet 2 inches tall, weighing 180 pounds, wearing khaki shirt and trousers and named "Charles." The second suspect was described as 5 feet 4 inches tall, weighing 120 pounds, and wearing a red shirt and khaki trousers. The "lookout" also noted that they were last seen running west on K Street, and were believed to live in the vicinity of 1004 Massachusetts Avenue, N.W. At 1:15 a. m. appellants were spotted by a patrol wagon as they walked near 10th and Massachusetts Avenue, N.W., approximately five blocks from the murder scene. The officer in the patrol wagon noticed that one of appellants (Hurt) was tall and had on khaki shirt and pants, while the shorter one [1] (Huff) had on a brown or tan pullover shirt over a red T-shirt and dark pants. When the officer asked Hurt his name he replied "Charles." At this point the officer noticed blood on the pants and shoes of Hurt. He asked both appellants to accompany him to the parking lot at the murder scene and they both complied. At the police station the clothes of both appellants were taken for evidence because they contained quantities of a substance suspected to be blood. Huff's shoes and hat were found to have blood on them, as were Hurt's trousers and boots. The blood on Huff's right shoe was identified as type AB. The blood on the victim's pants was also identified as type AB. Neither Huff nor Hurt had type AB blood.

On August 25, 1970 a lineup was held at which time Patricia Tierney identified Hurt but not Huff, while Nathaniel Black was unable to identify either appellant.[2] Counsel for appellants were present at this lineup. On August 16, 1971, a year later, Black was able to

---

* Sitting by designation pursuant to 28 U. S.C. § 291(a) (1970).

1. The record does not disclose Hurt's actual height and weight at the time of the murder. Huff testified he was 5′ 10½″ and weighed 163 at that time (Tr. 350).

2. At trial Black stated, "I couldn't identify anyone that night. The lights were kind of dim" (Tr. 74).

identify Hurt from a picture of the lineup shown to him in the U.S. Attorney's office. Tierney *again* identified Hurt from this same photograph on September 16, 1971, shortly before trial. Also on that day Charles Thomas identified both Hurt and Huff from the lineup picture. Neither counsel for appellants was present at these photo identification sessions.

On the day of the trial Huff moved to sever his trial and this motion was denied.[3] Thereafter, the judge held a *Simmons* hearing[4] on the admissibility of the photo identification of Huff made by Thomas. After examination of Thomas the court ruled that it would permit him to testify having found nothing *suggestive in the pretrial photographic* identification (Tr. 15, 18).

## II.

Both appellants argue first that plain error was committed by admission of evidence based upon the pretrial photographic identifications. Huff maintains that it was plain error for the trial court not to suppress all of Thomas' identification testimony because (1) the pretrial photographic identification of Huff by Thomas was so unfair as to violate due process, (2) it was made without the presence of counsel, (3) there was no independent basis for the in-court identification, and (4) Thomas should have been required to attend a lineup. Hurt raises the first two arguments with respect to the identification testimony of Black. Since none of these

objections were raised at trial, we consider them now under our authority to notice plain error.[5]

We find no plain error with respect to the photographic identification evidence introduced here. First, it is asserted that the totality of the circumstances surrounding the pretrial photographic identifications by Black and Thomas were so unfair as to constitute a denial of due process. Appellants both rely on the recent case Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) wherein the Supreme Court reviewed, *inter alia*, its four prior decisions on the scope of due process protection in the context of suggestive identification procedures.[6] The Court stated:

> We turn, then, to the central question, whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

93 S.Ct. at 382. Appellants contend that an application of these factors to the photographic identifications here reveals that there was a violation of due proc-

---

3. The trial judge stated that since Hurt was going to take the stand, his testimony would be subject to Huff's cross-examination and therefore he could see no prejudice (Tr. 4).

4. A *Simmons* hearing (Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) is conducted prior to an in-court identification to determine first, whether the pretrial identification has been violative of due process or the right to counsel, and second, if a violation is found, the court determines whether there is an independent source for the in-court identification

which would nonetheless support its admissibility. These procedures were outlined in Clemons v. United States, 133 U.S.App.D.C. 27, 34, 408 F.2d 1230, 1237 (1968).

5. Fed.R.Crim.P. 52(b).

6. Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).; Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

ess. However, as *Biggers* makes clear, these factors are to be considered only after an identification procedure has already been determined to be suggestive. The factors are to be used to determine whether, irrespective of the suggestivity of the procedure, there are sufficient indicia to conclude that the identification was reliable. In the case of the photographic identifications by Black and Thomas there have been no allegations nor facts indicating any suggestivity, and with respect to Thomas' identification the *Simmons* hearing specifically found none.[7]

■ While the passage of a year between the crime and the pretrial photographic identification would certainly dim a witness' memory this fact alone cannot support a conclusion that appellants' due process rights have been violated. United States v. King, 149 U.S. App.D.C. 61, 63–64, 461 F.2d 152, 154–155 (1972). We have reviewed the totality of the circumstances and do not find that there is "a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L. Ed.2d 1247 (1968).

■ Appellants' second argument that the photographic identifications violated their right to counsel must also fail. We have held that United States v. Ash, 149 U.S.App.D.C. 1, 461 F.2d 92, cert. granted, 407 U.S. 909, 92 S.Ct. 2436, 32 L.Ed.2d 682 (1972) shall have only prospective application, i. e., it applies only to photographic identifications made after March 1, 1972. United States v. Gillum, 150 U.S.App.D.C. 121, 463 F.2d 957 (1972). Further, we find no merit in Hurt's attempts to distinguish the facts surrounding Black's identification from United States v. Brown, 149 U.S. App.D.C. 43, 461 F.2d 134 (1972).

■ Huff's claim that the Simmons hearing did not elicit an independent basis for Thomas' in-court identification is without merit. No independent basis is required unless the identification is found to be suggestive,[8] and there was no such finding here. Finally, Huff implies that Thomas should have been compelled to attend a corporeal lineup rather than merely making a photographic identification. We note that there is no absolute constitutional right to a lineup. United States v. King, 149, U.S.App.D.C. 61, 64, 461 F.2d 152, 155 (1972). At the time the lineup was held on August 25, 1970 Thomas was unknown to the police conducting the investigation.[9] While a promptly held lineup conducted soon after Thomas' discovery by the police may have produced a more reliable identification, we find that the failure to hold such a lineup did not violate due process.

### III.

■ The second argument raised by both appellants is that it was reversible error for the court not to have severed their trials under Fed.R.Crim.P. 14.[10] We have previously noted the scope of the judge's discretion in such matters in United States v. Gambrill,

---

7. Tr. 15.

8. *See* note 4, *supra.* Even though the court need not have found an independent basis for Thomas' identification, the record of the *Simmons* hearing indicates that an independent basis did exist. *See* Tr. 10–14.

9. Tr. 6.

10. Fed.R.Crim.P. 14 provides:
 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

146 U.S.App.D.C. 72, 449 F.2d 1148 (1971). There we stated:

> The decision to grant a severence of defendants properly joined for trial is one over which the trial court possesses great discretion and exercise of that discretion will be reversed on appeal only when it is shown to have been clearly abused. The general rule is that defendants charged with jointly committing a criminal offense are to be jointly tried.

146 U.S.App.D.C. at 83, 449 F.2d at 1159 (footnotes omitted). Hurt contends that he was prejudiced by the mere presence of Huff in the court room, because Hurt was the taller defendant and two witnesses testified that the "taller" man did the stabbing. Since the two witnesses who had previously known Hurt[11] testified that the "shorter" man did the stabbing, Hurt feels that this testimony would have been more readily received by the jury had he been tried alone. While this latter proposition may be true, "[t]he mere fact that appellant might have had a better chance of acquittal if tried separately . . . does not establish his right to a severance." Robinson v. United States, 93 U.S.App.D.C. 347, 350, 210 F.2d 29, 32 (1954). *See also*, United States v. Wilson, 140 U.S.App.D.C. 220, 227, 434 F.2d 494, 501 (1970).

Hurt and Huff both argue that they were prejudiced by their joint trials because of the "irreconcilable defenses" that each asserted. Huff relied on an alibi defense, while Hurt maintained that Huff and he were both drinking at the Golden Gate Lounge, and that Huff and the victim had gone into the parking lot by themselves. Both appellants rely on our statement in Rhone v. United States, 125 U.S.App.D.C. 47, 365 F.2d 980 (1966) that

> [p]rejudice from joinder of defendants may arise in a wide variety of circumstances as, for example, . . . where the defendants present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that this conflict *alone* demonstrates that both are guilty.

125 U.S.App.D.C. at 48, 365 F.2d at 981 (emphasis added). We do not feel that either appellant has demonstrated nor do we find that prejudice to this degree was present because of the joinder of their trials. *Cf.* United States v. Robinson, 139 U.S.App.D.C. 286, 289, 432 F.2d 1348, 1351 (1970). Both appellants took the stand, and each of their conflicting defenses was subject to the scrutiny of the other's cross-examination. Huff's alibi defense was not contradicted solely by the testimony of his co-defendant, but Huff was placed at the murder scene by the testimony of witness Thomas and also the evidence of the victim's type blood on appellant Huff's shoe. This testimony and evidence would have been admissible against Huff even in a separate trial. Further, we note that the jury was instructed on a number of occasions to consider the evidence individually against each defendant (Tr. 479, 503, 521).

## IV.

Huff makes two other arguments which we dispose of briefly. First, he maintains there was no probable cause for his arrest and therefore the clothing seized thereafter should have been suppressed *sua sponte* by the court. It is basically his argument that he was arrested only because he was in the company of Hurt, who had been more accurately described in the radio "lookout."[12] He argues that there was insufficient evidence related directly to himself to constitute probable cause.

---

11. Both Charles Thomas and Patricia Tierney knew Hurt prior to the stabbing.

12. Since the suppression issue has been raised for the first time on appeal, it is being considered under a plain error standard. Washington v. United States, 134 U.S.App.D.C. 223, 225, 414 F.2d 1119, 1121 (1969).

However, we cannot merely consider the radio "lookout" and evidence as it related solely to Huff. "Probable cause is a plastic concept whose existence depends on the facts and circumstances of the particular case." Bailey v. United States, 128 U.S.App.D.C. 354, 357–358, 389 F.2d 305, 308–309 (1967). The fact is that the radio "lookout" was for two suspects, and since the two were arrested together we must view the presence of probable cause in light of all the evidence as it related to both defendants. Huff was arrested five blocks from the murder scene approximately an hour after the stabbing wearing a red T-shirt and brown pants, both described in the radio "lookout" (Tr. 186, 188, 349–51), in the presence of a suspect who not only fit the "lookout" description quite accurately but answered to the name given and had visible blood on his clothes and shoes. Under these circumstances a discrepancy of 6 inches in height and 40 to 50 pounds in weight between the "lookout" description and Huff's actual description [13] cannot negate all of the other indicia of probable cause. We find that no plain error was committed when the trial court did not *sua sponte* suppress Huff's clothing and shoes taken after his arrest.

 Finally, Huff contends that the court abused its discretion by admitting into evidence a photograph of the murder victim when the photograph was irrelevant and inflammatory. We find, however, that the photograph did have probative value when it was introduced, and was therefore admissible. Harried v. United States, 128 U.S.App.D.C. 330, 336, 389 F.2d 281, 287 (1967). Given the blood on appellant's shoe, it was relevant and material to show the amount of blood on the ground around the victim's body. Further, having examined the

photograph, we find nothing inflammatory about it.[14]

The convictions of both appellants are therefore

Affirmed.

---

13. *See* part I and note I, *supra.*

14. At trial after Huff's attorney objected that the photograph was too prejudicial and emotional, the trial judge admitted the photograph stating, "I find it quite the opposite. . . . I don't find it

inflammatory. There is no picture of the man's head. I think the position of the blood in and around the area is going to be part of the circumstantial proof. Therefore, I will be willing to receive it" (Tr. 216–17).