James **HERBERT, Jr.,** Appellant,

v.

**UNITED STATES,** Appellee.

No. 8178.

District of Columbia Court of Appeals.

Argued April 15, 1975.

Decided July 3, 1975.

Eugene Gressman, Washington, D. C., appointed by this court, for appellant.

Bette E. Uhrmacher, Asst. U. S. Atty., with whom Earl J. Silvert, U. S. Atty., John A. Terry, James F. McMullin, and Peter O. Mueller, Asst. U. S. Attys., were on the brief, for appellee.

Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.

NEBEKER, *Associate Judge*:

This appeal arises from a conviction for first degree burglary while armed and armed robbery. We consider, in varying

detail, each of appellant's contentions, and for reasons articulated, we affirm.

At approximately 2:30 p. m. on March 22, 1973, Beverly Cook was accosted in the hall outside her northeast Washington apartment by a man carrying a pistol. The armed man held her at gunpoint in her apartment while his two companions ransacked her pocketbook and her apartment. The robbers drew the blinds and curtains, making the lighting dim. Miss Cook stood two to three feet from the armed robber throughout the entire incident, said to have lasted ten to fifteen minutes. She was then tied up by the departing robbers and left unharmed.

Afterwards, she described the armed robber to police as Negro male, 5'6" to 5'8" tall, 170 to 180 pounds, and 17 to 18 years old. She later identified appellant "positively" as the armed robber in a police photographic display, in a lineup, and in court at trial.

Appellant's original counsel, who appeared through arraignment and indictment, was excused by the court on his showing that appellant's alibi witness proposed to commit perjury. Appellant's second counsel, who represented appellant through trial, and for the same reason did not call the alibi witness, was replaced after appellant requested new counsel to argue the appeal. Appellant's third counsel argued the appeal before this court.

Appellant contends (1) that the photographic and lineup identifications were so impermissibly suggestive as to constitute a violation of due process, (2) that he was denied effective assistance of counsel in that trial counsel failed to put on alibi testimony or investigate certain potential alibi witnesses, and (3) that he was insulated from impeachment by inconsistent statements made to the District of Columbia Bail Agency under D.C.Code 1973, § 23–1303(d).

■ As to his first contention, appellant failed either to file a pretrial motion to suppress the identifications or to object at trial to the admissibility of the identifications. Unless plain error is shown, an appellant cannot raise the issue of suppression of indentification evidence for the first time on appeal. *Adams v. United States,* D.C.App., 302 A.2d 232, 234 (1973); *United States v. Alston,* 157 U.S. App.D.C. 261, 483 F.2d 1264 (1973); *United States v. Hurt,* 155 U.S.App.D.C. 217, 476 F.2d 1164 (1973); D.C.Code 1973, § 23–104(a)(2). Considering the circumstances of this case, the fact that appellant's clothes in the photo display somewhat resembled the clothes which Miss Cook testified at trial that the armed robber wore does not render the photographic display impermissibly suggestive in view of the total number of pictures observed (150) and the number of men of comparable age and appearace in the array. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

■ Appellant, who is 5'4" tall and who was described by Miss Cook as 5'6" to 5'8" tall, was forced to stand on a box elevating his height to approximately 5'7". He now contends that for this reason the lineup was impermissibly suggestive and a violation of due process. According to a police officer at trial, this is done regularly to ensure that "everyone will be viewed fairly, not solely on their height." This procedure appears to be an effort whereby police seek to avoid singling out one member of a lineup in a manner which is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States, supra* at 384, 88 S.Ct. at 971. See also *Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). While we decline on this record to pass on the constitutional acceptability of such a procedure, we do have some reservations whether it is the best means of assuring fair identification. Ability to identify comes from a range of factors and combinations of them. To exclude height by such artificial means can produce inaccura-

cy. The prevention of a substantial likelihood of irreparable misidentification does not mean that a feature of the suspect must be changed and the change concealed. A fair lineup is not one calculated to trick the witness.

Under these circumstances, however, " ' . . . our discretion to consider plain error would not be wisely exercised by entertaining [the] unraised' " identification " 'issue.' " *Adams v. United States, supra,* 302 A.2d at 235, *quoting Washington v. United States,* 134 U.S.App.D.C. 223, 226, 414 F.2d 1119, 1122 (1969).

■ As to appellant's second contention, it was not a denial of effective assistance of counsel for appellant's trial counsel to make a conscientious decision as an officer of the court not to put on alibi testimony which, after investigation, he became convinced would be perjured. First, perjury is proscribed by statute. D.C.Code 1973, § 22–2501. Counsel are also not exempt from "prosecution under the statutes denouncing the crimes of obstruction of justice and subornation of perjury." *Gregory v. United States,* 125 U.S.App.D.C. 140, 143, 369 F.2d 185, 188 (1966). Second, any counsel is an officer of the court and "is under obligation to defend with all his skill and energy, but he also has moral and ethical obligations to the court, embodied in the canons of ethics of the profession." *Mitchell v. United States,* 104 U.S. App.D.C. 57, 62, 259 F.2d 787, 792 (1958). The Code of Professional Responsibility of the American Bar Association specifically precludes a lawyer from "[k]nowingly us-[ing] perjured testimony or false evidence." ABA, *Code of Professional Responsibility,* DR 7–102(a)(4) (1969). Hence, the representation of appellant in these circumstances did not deprive him of "a substantial defense or deprive him of a trial in any real sense." *Cooper v. United*

*States,* D.C.App., 248 A.2d 826, 827 (1969). *See also Terrell v. United States,* D.C. App., 294 A.2d 860, 864 (1972). The same result would also follow if we were to use the more elastic and arguably lower standard applied in *United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197 (1973).

■ The third issue presents a question of statutory interpretation respecting the breadth of use for impeachment purposes of a prior inconsistent statement given by the accused to a representative of the District of Columbia Bail Agency. We hold that impeachment with the statement was properly undertaken in the prosecution of the offense for which the Bail Agency statement was given. We thus reject appellant's argument that the relevant statute, D.C.Code 1973, § 23–1303(d), must be read to limit this impeachment to "any subsequent proceeding", meaning only possible subsequent litigation in which the accused's credibility may be in issue and which is unrelated to the offense for which he was arrested and charged.

Section 23–1303(d) is worded thus:

> Any information contained in the agency's files, presented in its report, or divulged during the course of any hearing shall not be admissible on the issue of guilt in any judicial proceeding, but such information may be used in proceedings under sections 23–1327, 23–1328, and 23–1329, in perjury proceedings, and for the purposes of impeachment in any subsequent proceeding.

Appellant says it is ambiguous and should be construed as if phrased " . . . for the purposes of impeachment in other subsequent cases." We think that such a construction would do violence to expressed contrary congressional intent[1] and give rise to an irrational result. To hold other-

---

1. The House of Representatives Committee on the District of Columbia stated in its report accompanying the bill:

    [Present law, which § 23–1303(d) alters] permits an arrested person to give what-

ever information he wants to the Agency for purposes of securing his pretrial release without any deterrent concern that the information provided may be used in perjury proceedings or as impeachment of

wise would enable an accused to make statements to the agency in an effort to get a favorable bail decision and then with effective impunity testify inconsistently at trial in that case—only risking impeachment in the wholly unlikely event that his credibility might be subject to attack by use of the statement in unrelated and different "subsequent proceeding[s]." Moreover, the committee report, note 1 *supra,* does not disclose such an intended limitation and indeed cites two decisions where impeachment was based on statements made in earlier stages of the same case.[2]

We hold that appellant had no right under the statute[3] or otherwise[4] to use an inconsistent statement to the Bail Agency as a sword for favorable bail action and then be shielded from its consequences as to his credibility when he chooses to testify differently at trial. The judgment of conviction is

Affirmed.

his credibility, an unreasonable imposition on the truth-seeking process of court proceedings.

Disclosure of information is permitted in cases of perjury and impeachment; in this respect see *Woody* v. *United States,* 126 U.S.App.D.C. 353, 379 F.2d 130 (1967); *Bailey* v. *United States,* 128 U.S.App.D.C. 354, 389 F.2d 305 (1967). Confidentiality of the Agency's files is preserved, however, for any other judicial proceedings on the affirmative issue of guilt. . . . [H.R.Rep.No.907, 91st Cong., 2d Sess. 116–17 (1970).]

\* \* \* \* \*

Subsection (d) has amended the confidentiality provision of existing law to permit disclosure in . . . Sections 23–1327 (penalties . . . for failure to appear), 23–1328 (penalties for offenses committed during release), and 23–1329 (penalties for violation of conditions of release). Disclosure is also permitted when the information is relevant to perjury proceedings or for use as impeachment of credibility. [*Id.* at 178.]

2. It is also significant that this same language is found in D.C.Code 1973, § 23–1322 (c)(6), dealing with testimony given by a defendant in pretrial detention hearings.

There, also, the House Report specified that this testimony is admissible for impeachment in the trial of the same offense for which pretrial detention was sought:

The provision also does not permit a defendant testifying in his own behalf to perjure himself and what he says may be used for impeachment. To provide otherwise would be to interfere unreasonably with the truth-seeking process of court proceedings. A defendant clearly has a right to testify in his own behalf; he does not have a right to lie under oath with impunity. [H.R.Rep.No.907, 91st Cong., 2d Sess. 183–84 (1970).]

3. *Hodge* v. *United States,* D.C.App.No.7828 (unpublished opinion, Aug. 5, 1974), cited in Appellee's Brief at 8.

4. *Cf. Oregon* v. *Hass,* —— U.S. ——, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris* v. *New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Walder* v. *United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). Although based upon the Constitution rather than a statute, these cases nevertheless are supportive here because of their emphasis on the traditional truth-seeking role of the trial process.