UNITED STATES of America

v.

Isaac Weston THOMAS, Appellant in No. 17-1491, Pernell Randolph Johnson.

Appeal of Pernell Randolph JOHNSON, in No. 71-1510.

Nos. 71-1491, 71-1510.

United States Court of Appeals, Third Circuit.

Argued Oct. 1, 1971.

Decided Nov. 19, 1971.

---

Peter S. Valentine, Glickman & Valentine, Newark, N. J., argued for appellant Isaac Weston Thomas.

Louis Serterides, Jersey City, N. J., argued for appellant Pernell Randolph Johnson.

William A. Carpenter, Jr., Asst. U. S. Atty., Newark, N. J. (Herbert J. Stern, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before SEITZ, Chief Judge, and HASTIE, Circuit Judge, and HERMAN, District Judge.

## OPINION OF THE COURT

PER CURIAM:

Defendants who were found guilty after a trial by jury of violation of 18 U.S.C.A. § 113, assault with intent to murder one James Dixon, Jr., on the United States Government Military Reservation, at Fort Monmouth, New Jersey, raise on appeal the following issues:

(1) Did the trial judge commit plain error in his charge when he said:

"At the outset of the trial there was a map introduced into evidence marked G–1. It was stipulated that this map described property owned by the United States Government, and as I recall there was testimony that the shooting of Mr. Dixon occurred within the area described on that map. So far as the 'special territorial jurisdiction of the United States' is concerned, you should have very little difficulty with that aspect of the offense which confers jurisdiction upon a Federal Court to try a case of this kind. These, according to the stipulation, were lands reserved or acquired for the use of the United States and under the jurisdiction of the United States Government." (at 293a)

\* \* \* \* \* \*

"One thing here doesn't seem to be in dispute. Dixon got shot. He got shot down on a Federal reservation." (at 303a)

(2) Did the photographic identification of the defendants by Charles Lovelace violate the principles announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and in United States v. Zeiler, 427 F.2d 1305 (3d Cir. 1970).

(3) Did the trial court commit error in admitting, over objection, the testimony of Lovelace which was alleged irrelevant by defendants. And,

(4) Did the government meet its burden of proving that the alleged crime falls within the jurisdiction of the United States Courts.

We find no merit in the position of the defendants on any of these issues and will affirm the lower court.

■ The trial court did in fact err when it said, *"One thing here doesn't seem to be in dispute. Dixon got shot. He got shot down on a Federal reservation,"* [1] but this is harmless error when considered in connection with the charge as a whole. Whether or not the shooting took place on a Federal Reservation was a question for the jury, and the judge many times told the jury that it was their recollection of the facts that should govern and not his, and further, that the prosecution had the burden of proving every element of the offense beyond a reasonable doubt, and that the jury was the sole judge of the facts. We have read the charge in its entirety and find that it adequately states the rules of law applicable to the case and clearly informed the jury of its duties in relation to the finding of facts and applying the law thereto. It is the charge as a whole that should be judged, and not isolated parts. *See*, United States v. Thurman, 135 U.S.App.D.C. 184, 417 F.2d 752, 753 (1969), cert. denied, 397 U.S. 1026, 90 S.Ct. 1269, 25 L. Ed.2d 535; Harris v. United States, 367 F.2d 633, 636 (1st Cir. 1966), cert. denied, 386 U.S. 915, 87 S.Ct. 862, 17 L. Ed.2d 787; United States v. Andreadis, 366 F.2d 423, 434 (2d Cir. 1966), cert. denied, 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541. In any event, at the conclusion of the court's charge each counsel indicated that he had no exception and did not call to the trial judge's attention the error of which they now complain.

■ Concerning the alleged photographic identification, the government contends that the principles of *Wade* and *Zeiler, supra,* were never in issue in this case and that the testimony of Lovelace was merely corroborative of Dixon's testimony that the three of them, the defendants and Dixon, had stopped at the gas station in the early morning hours of the day of the assault. Dixon testified that he had known both defendants for many years and considered them his friends and his ability to identify his assailants was never questioned. When on direct examination of Lovelace it was revealed that he had been shown photographs of the defendants after they had been arrested, counsel for defendants requested a hearing out of the presence of

---

1. Emphasis ours unless otherwise indicated.

the jury to determine if Lovelace had identified either defendant from the pictures, and further, to determine if any possible in-court identification would be tainted by the showing of the photographs. The trial court denied the request when the United States Attorney indicated that he was not proceeding any further with any identification from the photographs. Lovelace then identified in court the two defendants, one of whom, Thomas, had been a customer of the gas station on previous occasions, and Lovelace was vigorously cross-examined on this identification, and unshaken, but he was not cross-examined on any possible out-of-court identification or taint as a result thereof.

Defendants' reliance on *Wade* and *Zeiler* under the facts in this case is misplaced. It was not error for the trial judge here to deny an *in camera* hearing.

 In United States v. White, 446 F.2d 1280 (1971) this court had a similar problem before it, but there, unlike the case before us, the eyewitness identified the defendant "as a participant in the alleged wrongdoing." This court held that on appeal the defendant was not entitled to another opportunity to explore the speculative possibility of improperly suggestive pre-trial identification where he had not pursued that issue at trial. *A fortiori,* these defendants cannot pursue it here where the identification was not as a participant in wrongdoing but merely corroborative of testimony that they, with a third man, had been in the vicinity on the night in question.

The jurisdiction of the United States District Court was established partly by stipulation of the parties that the Monmouth Military Reservation was indeed "lands reserved or acquired for the use of the United States, and under the exclusive * * * jurisdiction thereof, * * *" 18 U.S.C. § 7, and partly by the uncontradicted direct testimony of the victim, and others, as to

where he was found after the assault, and from the victim's testimony concerning his movements from the time he was shot to the time he was found. This latter testimony provided strong circumstantial evidence that he was shot on the Military Reservation.

We have fully considered defendants' other issues raised on appeal and conclude that they are without merit and require no further discussion.

The judgments of the district court are affirmed.