**UNITED STATES of America ex rel. Cleveland REED**

**v.**

**Raymond ANDERSON, Warden, Delaware Correctional Center, Appellant.**

**No. 71–1816.**

United States Court of Appeals, Third Circuit.

Argued En Banc Jan. 12, 1972.

Decided April 11, 1972.

Daniel A. Durkin, Wilmington, Del., for appellant.

Stanley Lowicki, Wilmington, Del., for appellee.

Before SEITZ, Chief Judge, and HASTIE, VAN DUSEN, ALDISERT, ADAMS, GIBBONS, MAX ROSENN, JAMES ROSEN, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1968), the Supreme. Court applied a constitutional gloss to what theretofore had been an evidentiary rule and held that a post-indictment lineup where the accused was exhibited to witnesses is a "critical stage" requiring the presence of counsel and that otherwise a presumption of impropriety obtains. In the absence of counsel, the prosecution must establish by clear and convincing evidence that any subsequent in-court identification was based upon observations other than the lineup identification. In United States v. Zeiler, 427 F.2d 1305 (3d Cir. 1970), this court extended the *Wade* "critical stage" rule to those instances where the prosecution introduces as evidence of guilt a pre-trial photographic identification of the accused which takes place after an accused has been arrested and charged by some judicial officer with the crime. Today we re-examine this holding.

Convicted of armed robbery, Cleveland Reed was given a ten-year sentence, and appealed to the Delaware Supreme Court, where he contended that while he was in custody, the alleged robbery victim made an out-of-court identification of him, without the presence of his counsel. The details of this pre-trial photographic identification were introduced by the State as part of its case. Relying on *Wade* and *Gilbert*, he argued that this evidence was inadmissible. The Delaware Supreme Court refused to extend the reach of those cases to these circumstances and denied relief. Reed v. State of Delaware, 281 A.2d 142 (Del.Sup. 1971). When Reed sought relief by federal habeas corpus, the district court ruled that it was duly bound to apply the teaching of *Zeiler*, and granted the writ. 329 F.Supp. 15 (D.Del.1971). The State has appealed.

Because Delaware's appeal squarely meets the constitutional issue, we agreed to en banc consideration. In so doing, we recognize that the facts in this case would permit us to avoid meeting the substantive issue, deciding this case solely on the question of retroactivity. Indeed, such an approach would, in our view, admit of easy resolution.[1] But we are persuaded that the substantive issue is important enough to merit reconsideration of the important, underlying constitutional questions.[2] Thus, we to-

1. *Zeiler* was decided on June 5, 1970. The photographic identification of Reed, which gave rise to this appeal, occurred in August, 1968. Applying the rationale of Stovall v. Denno, 388 U.S. 293, 296, 87 S.Ct. 1967, 1969, 18 L.Ed.2d 1199 (1968), which limited the application of the constitutional rule of *Wade* and *Gilbert* to "only those cases and all future cases which involve confrontations for identification purpose conducted in the absence of counsel after this date [June 12, 1967]," we have experienced no difficulty in limiting the application of *Zeiler* to those out-of-court photographic identifications conducted in the absence of counsel after June 5, 1970. United States v. Higgins, 458 F.2d 461 (3d Cir. 1972).

2. We do not accept the notion that the *Zeiler* counsel rule would be seldom invoked because it applies only when in-court photographic identification testimony is introduced as primary evidence of guilt. Photographic identification evidence is often offered to discredit or bolster other identification testimony. *See, e. g.,* United States v. Roth, 430 F.2d 1137, 1140 (2d Cir.), cert. denied, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 633 (1971). *Cf.,* United States v. Thomas, 451 F.2d 760, 763 (3d Cir. 1971). Thus, as prior consistent or inconsistent statements, prior identifications may be held admissible as exceptions to the hearsay rule without violating the Confrontation Clause. See California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); United States v. Small, 443 F.2d 497, 498–499 (3d Cir. 1971). And as we said in United States v. Barber, 442 F.2d 517, 527, n. 16 (3d Cir. 1971):

> [T]he courts have been generous in the admission of eye-witness identification in order to permit the jury to make its own assessment. The emphasis has been on inclusion of evidence, rather than exclusion; credibility, rather than

day decide whether there should be continuing viability of the central issue therein stated:

> The considerations that led the court in *Wade* to guarantee the right of counsel at lineups apply equally to photographic identifications conducted after the defendant is in custody.

427 F.2d at 1307.

Our anaylsis of *Wade* begins with the observation that this landmark case is not bottomed on the Fifth Amendment. Although Chief Justice Warren, and Justices Black, Douglas, and Fortas would have applied this additional constitutional dimension to the problem, the Court relied solely on Sixth Amendment considerations.[3] Indeed, throughout the Court's opinions in the *Wade* trilogy runs an unabated emphasis on its confrontation clause:

> In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.

The issue posed in *Wade* was " . . whether potential substantial prejudice to defendant's rights inheres in the particular confrontation." In focusing on the "confrontation compelled by the State between the accused and the victim or witnesses," 388 U.S. at 228, 87 S.Ct. at 1933, the Court described lineups and showings as "either form of confrontation," 388 U.S. at 229, 87 S.Ct. at 1933 and emphasized the difficulty in "depicting what transpires at lineups and other forms of identification confrontations," 388 U.S. at 230, 87 S.Ct. at 1934. In discussing these problems it referred to "pre-trial confrontations for identification," 388 U.S. at 232, 87 S.Ct. at 1935, "suggestive influences in the secrecy of the confrontation," 388 U.S. at 235, 87 S.Ct. at 1936, "meaningful confronta-

tions," 388 U.S. at 236, 87 S.Ct. at 1937, that "no argument is made . . . that notice to counsel would have prejudicially delayed the confrontations," 388 U.S. at 237, 87 S.Ct. at 1938.

Indeed, the Court suggested that the necessity for the constitutional rule would be removed if "[l]egislative or other regulations, such as those of local police departments, [were instituted to] eliminate the risks of abuse and unintentional suggestion at lineup proceedings and the impediments to meaningful confrontation at trial," 388 U.S. at 239, 87 S.Ct. at 1938.

Thus, while the constitutional underpinnings relate to the broader base of right of confrontations at trial, the actual mischief sought to be avoided was the physical confrontation of an uncounseled defendant with his alleged victim and other witnesses. Influenced by the dictates of public policy, the Court promulgated a presumption of constructive impropriety or suggestiveness in police lineups and showups, characterizing them as sources of "[a] grave potential for prejudice, intentional or not." 388 U.S. at 236, 87 S.Ct. at 1937. This conclusion can be analogized to the presumption of constructive psychological or physical coercion in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1961), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1964), environing the statements taken by the police of those in custody. Because of such atmospheres, the Court has concluded that the potential for harm to the accused can be minimized by the presence of counsel.

In the various Supreme Court articulations of Sixth Amendment requirements of counsel, there appears one omnipresent characteristic common to the diverse

---

admissibility. . . . Balancing the liberal admissibility of identification evidence is the commensurately heavy burden placed upon the prosecution of proving the identity of the criminal actor by proof beyond a reasonable doubt. See also, Annotation, "Extrajudicial Identification," 71 A.L.R.2d 449, 454.

3. A majority of Justices (Brennan, Harlan, Stewart, Clark, and White) expressly held the Fifth Amendment inapplicable. *Wade, supra*, 388 U.S. at 221–223, 87 S. Ct. 1926.

fact situations—the physical presence of the accused at the "critical stage": presence at trial, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); presence at confrontation of witness, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); presence at police interrogation after indictment, Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); presence at the police interrogation in custody, Escobedo v. Illinois, *supra*, and Miranda v. Arizona, *supra*; presence at preliminary hearings or arraignments, Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) and Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); presence at sentencing, Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); presence at a juvenile hearing, In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); and presence at the lineups and showups, *Wade* and *Gilbert*.

■ No critical stage has been found to exist—at pre-trial or trial—requiring the assistance of counsel in a factual setting where the accused was not physically present and required or entitled to participate by action or inaction. This factual homology emanates not merely from the design of the Sixth Amendment, which created both the right of confrontation and the right to assistance of counsel, but also from a common rationale. "Critical stages" are those links in the prosecutorial chain of events in which the potential for incrimination inheres or at which the opportunity for effective defense must be seized or foregone. Whether his role be active or passive, the accused must, therefore, be present at all such stages, for neither the prosecution nor the defense can otherwise proceed. And to insure that each proceeds in fairness, "the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Wade, supra,* 388 U.S. at 226, 87 S.Ct. at 1932. This tenet of *Wade* is manifestly inapposite to pretrial photographic displays, where no actual confrontation of the accused takes place. Because the accused is not present, there need be no concern that he must "stand alone."

Recurring through *Wade* is the Court's concern over the difficulty of reconstructing with fairness and accuracy what actually took place at the lineup or showup: "the defense can seldom reconstruct the manner and mode of lineup identification for judge or jury at trial. Those participating in a lineup with the accused may often be police officers; in any event, the participants' names are rarely recorded or divulged at trial." 388 U.S. at 230, 87 S.Ct. at 1934. "In short, the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification." 388 U.S. at 231–232, 87 S.Ct. at 1934–1935. Those who would evaluate this consideration as supportive of the *Zeiler* rule reason that a photographic identification procedure where the accused is not present is an argument of *a fortiori* proportions: the very absence of the accused or his counsel from the pre-trial proceedings makes it even more difficult for the accused to determine whether suggestive or improper techniques were employed.

Conceding there is logic and merit to this argument, we are nevertheless convinced that it is relatively simple to reconstruct identification by photographs in the presence of the judge and jury. Even on an appellate level, this court was able to determine in *Zeiler* that the photographic display to the witnesses in the second trial [4] was "deemed 'so unnec-

4. William Zeiler was indicted and charged with committing eleven bank robberies in the Pittsburgh area over a period of more than five years. He was tried for ten of these robberies in January, 1968, and was convicted for having committed two of

essarily suggestive and conducive to irreparable mistaken identification,' and so pointless for any purpose other than suggestion, as to violate due process" to the extent that held that it was "not a permissible conclusion" for the trial court to hold that the government established its burden of proving by clear and convincing evidence that the in-court testimony was not tainted. 427 F.2d 1308. Contrariwise in *Zeiler II*, after remand, we were able to reach the opposite conclusion in a review of a display of photographs involving other witnesses in the first trial.[5] 447 F.2d 993 (3d Cir. 1971).

Indeed, *Wade* and *Gilbert* contain sufficient references suggesting that the court did not consider the photographic identification process as a procedure extremely difficult to reconstruct at trial. *Wade* spoke of "fingerprints, blood sample, clothing, hair, and the like," and said that the "variables in techniques [are] few enough." 388 U.S. at 227, 87 S.Ct. at 1932. *Gilbert* held that the taking of exemplars of handwriting was not a critical stage because "there is mini-

mal risk that the absence of counsel might derogate from his right to a fair trial." 388 U.S. at 267, 87 S.Ct. at 1953. And as Judge Friendly observed in United States v. Bennett, 409 F.2d 888, 898–900 (2d Cir. 1969), cert. denied, Jessup v. United States, 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101, rehearing denied, 396 U.S. 949, 90 S.Ct. 376, 24 L.Ed.2d 256:

> . . . in *Wade* itself, the Court listed as one of the ways the prosecution might attempt to show that a witness' identification of defendant at trial was not the fruit of a lineup held in the absence of counsel a showing of "the identification by picture of the defendant prior to the lineup," 388 U.S. at 241, 87 S.Ct. 1926, at 1940, which clearly implies that such identifications are permissible even when defendant's counsel is not present.

We turn now to the pervasive concern of the Court—"the vagaries of eyewitness identification." We do not minimize the importance of imposing safeguards which the Court described as "pe-

---

them. A second trial, concluding in June, 1968, resulted in a conviction for the remaining bank robbery. In reviewing convictions from both trials, this court deemed suggestive only the photographs displayed to witnesses in the second trial. Because the record did not disclose what photographs were shown to the identifying witnesses in the first trial, we ordered remand for a hearing on suggestiveness and to grant the government an opportunity to establish an independent origin for the in-court identifications. We reviewed the first trial hearing at 447 F.2d 993 (3d Cir. 1971) (*Zeiler II*).

5. With respect to the first criterion, none of the specific elements of suggestiveness which we found in the photographic array shown to the witnesses at the second trial are present here. Whereas three of the eight photographs in the previous group were of Zeiler, the defendant is only pictured once in the present group of six photographs. All the photographs in the previous group were police "mug shots" except those of Zeiler, which were ordinary snapshots and might easily have reminded the viewers that the "Commuter Bandit" had only recently been arrested, while the present group includes two other

pictures besides that of Zeiler which are not "mug shots." Whereas in the previous group only Zeiler was pictured wearing glasses, as had the actual robber, neither Zeiler nor any of the other individuals in the present group is shown wearing glasses. Furthermore, the identification procedure itself shows no indication of improper suggestion. Each witness was interviewed separately outside the presence of the others; the photographs were arranged in a random order with Zeiler's pictures somewhere in the middle so as not to stand out; and the investigating FBI agent neither suggested that any particular person in the pictures was under suspicion nor commented that the witnesses had picked the "right" man. In contrast with our conclusion concerning the previous group of photographs, therefore, we find nothing to suggest that the attention of each of the witnesses in question was irreparably "focused on Zeiler's picture as identifying the suspect with whom the investigators were concerned."

United States v. Zeiler, 447 F.2d 993, 995–996 (3d Cir. 1971). *See also*, Annotation, "Photographic Identification—Suggestiveness," 39 A.L.R.3d 1000.

744

culiarly riddled with innumerable dangers and variable factors." 388 U.S. at 228, 87 S.Ct. at 1933. Indeed, exercising our supervisory power in United States v. Barber, 442 F.2d 517, 528 (3d Cir. 1971), we imposed mandatory jury instructions designed to protect the accused in the trials of federal crimes where factors not conducive to proper identification are not present. This court has always been alert to extend to one accused of crime the optimum of constitutional and procedural protections. We recognize that the exclusionary rule of *Zeiler* brings on collision course the public policy considerations of *Wade* and *Gilbert* and the equally respected consideration that evidence relevant to the truth-finding process should not arbitrarily be withheld from the fact finder; this is especially so where, as here, the evidence traditionally has been regarded as admissible and subject only to the rigorous tests of credibility. At a time when traditional rules of evidence are constantly being subjected to reexamination, and efforts are constantly being made to extend the reach of the exclusionary rule, the determination of whether certain evidence should be placed beyond or within the constitutional pale becomes a task of exquisite agony.

Seeking guidance, as we must, from the Supreme Court, we deem it significant that notwithstanding the formidable analysis of eye witness identification in *Wade,* 388 U.S. 228–239, 87 S.Ct. 1926, and official recognition of the possible untrustworthiness of eye witness identification, the Court has enunciated no constitutional inhibitions except those directly intertwined with the concept of confrontation. Insofar as constitutional parameters have been drawn, an eye witness completely unknown to the police prior to trial may walk into a courtroom and properly testify: "I saw the accused do the deed. I never saw him before or since. I only looked for a second. But I am absolutely, unshakenly positive that he is the man." Other than cautionary instructions concerning the weight to be given his testimony, there is no constitutional barrier to the admission of such testimony, despite the danger of its inherent untrustworthiness.

Finally, in striking the balance between the "desirability of deterring the constitutionally objectionable practice" of uncontrolled police lineups and the "undesirability of excluding relevant evidence," the *Wade* Court stated: "No substantial countervailing policy considerations have been advanced against the requirement of the presence of counsel" at lineups, 388 U.S. 237, 87 S.Ct. 1937, and that "counsel can hardly impede legitimate law enforcement," 388 U.S. 238, 87 S.Ct. 1938.

Unlike the circumstances in *Wade,* we believe there are countervailing policy considerations in the use of photographic identification. The brief, *amici curiae,*[6] filed in this proceeding suggests that "the policy reasons against such a rule are overwhelming." After making inferences to the problems inherent in investigating a prison riot, the brief at pages 19–20 states:

But it is clear that the problems caused by law enforcement officers, witnesses and defense counsel by a blanket prohibition of uncounseled photographic identifications of in-custody defendants is not confined to extraordinary situations such as those involved in the Holmesburg riot. Often the defendant will be in custody at a place far removed from potential witnesses. Although there may well have been probable cause for his arrest, that probable cause may well be based on a description or identification by fewer than all of the available eyewitnesses, and the police are rightly interested in discovering whether the other eyewitnesses corroborate or contradict the original identifications.

6. By the State of New Jersey, Commonwealth of Pennsylvania, Pennsylvania District Attorneys Association, and District Attorney of Philadelphia, joined in by the United States Attorneys for all the Districts in the Third Judicial Circuit.

The only practical way to do so where the defendant is distant from the scene or the witnesses widely scattered, is by photographic identifications. If it would be unduly burdensome on witnesses to bring them to the prison— and this burden is likely to be greatest in wide ranging federal crimes although witnesses to state crimes may also live far apart—the burden on defense counsel to travel from place to place with the investigating detectives if the witnesses are not to be forced to come to the suspect, would be equally great. And, assuming counsel can be forced to accompany the detectives, this would be unduly burdensome on the criminal process in view of the limited number of counsel available to represent defendants at trial, during interrogations and at live lineups, as well as on collateral attack and in the appellate courts.

Other situations under which photographic identification of an in-custody defendant seems highly appropriate include the case of a robber, rapist or burglar with a distinctive modus operandi. When such a defendant is arrested, it is certainly good practice for the police to interview the victims and witnesses to similar crimes. Yet these victims and witnesses are likely to be even more widely scattered than the victims or witnesses to a single criminal event and the burden of either gathering the witnesses for a lineup or compelling counsel to travel from place to place for photographic identifications will be proportionately greater. Similar appropriate uses of photographs include viewings by victims of robbers, larcenists, or burglars where the defendant has been arrested and is in custody on charges of receiving stolen goods or where fingerprints or other circumstantial evidence is

what links the in-custody defendant to the crime.

*See also,* United States v. Clark, 289 F. Supp. 610, 621 (E.D.Pa.1968).

■ We therefore conclude that the principles which dictated the *per se* exclusionary rule in *Wade* and *Gilbert* should not have been made applicable to a pre-trial photographic identification as we did in *Zeiler*.[7] If, as here, the identification is not in a live lineup at which defendant may be forced to act, speak or dress in a suggestive way, where the possibilities for suggestion are multiplied, where the ability to reconstruct the events is minimized, and where the effect of a positive identification is likely to be permanent, but at a viewing of immobile photographs easily reconstructible, far less subject to subtle suggestion, and far less indelible in its effect when the witness is later brought face to face with the accused, there is even less reason to denominate the procedure a critical stage at which counsel must be present.

We therefore overrule that portion of *Zeiler* which denominated a pre-trial photographic identification as a critical stage requiring the presence of counsel to satisfy the Sixth Amendment.

■ This is not to say that a defendant will not be protected from inherently suspect identification evidence. As stated by Mr. Justice Harlan in California v. Green, 399 U.S. 149, 186, n. 20, 90 S.Ct. 1930, 1950, 26 L.Ed.2d 489 (1970), (concurring opinion):

Due process does not permit a conviction based on no evidence, Thompson v. City of Louisville, 362 U.S. 199, [80 S.Ct. 624, 4 L.Ed.2d 654] (1960), Nixon v. Herndon, 273 U.S. 536, [47 S.Ct. 446, 71 L.Ed. 759] (1927), or on evidence so unreliable and untrust-

7. See, United States v. Bennett, supra; See also, United States v. Long, 449 F.2d 288 (8th Cir. 1971); United States v. Fitzpatrick, 437 F.2d 19, 25–26 (2d Cir. 1970); United States v. Williams, 436 F.2d 1166, 1169 (9th Cir. 1970); United States v. Ervin, 436 F.2d 1331, 1334 (5th Cir. 1970); United States v. Von Roeder, 435 F.2d 1004, 1010 (10th Cir. 1970); United States v. Collins, 416 F.2d 696, 699 (4th Cir. 1969); United States v. Robinson, 406 F.2d 64, 69 (7th Cir. 1969). *Cf.,* United States v. Ash, 461 F.2d 92 (D.C.Cir. 1972).

worthy that it may be said that the accused had been tried by a kangaroo court. Cf. In re Oliver, *supra*, [333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948)]; Turner v. Louisiana, 379 U. S. 466, [85 S.Ct. 546, 13 L.Ed.2d 424] (1965).

In Stovall v. Denno, 388 U.S. 293, [87 S.Ct. 1967, 18 L.Ed.2d 1199] (1967), and Simmons v. United States, 390 U.S. 377, [88 S.Ct. 967, 19 L.Ed.2d 1247] (1968), the underlying principle was refined. The Court there recognized that evidence of identification—always a critical issue in a criminal trial—should not be received if the circumstances of a pretrial confrontation were so infected by suggestiveness as to give rise to an irreparable likelihood of misidentification.

■ An examination of the record indicates that a *Simmons* argument on the totality of circumstances, United States v. Conway, 415 F.2d 158, 163–164 (3d Cir. 1969), was presented to the district court on the possible impermissible suggestiveness of the photographic display:

[E]ach case must be considered on its own facts, and . . . convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very

substantial likelihood of irreparable misidentification.

390 U.S. at 384, 88 S.Ct. 971.

Because this issue was presented to the Delaware court which decided it adversely to Reed, 281 A.2d at 147, it was properly before the district court. Expressing no view on the merits of this contention, we will remand the proceedings for a proper resolution of it.

The order granting the writ of habeas corpus will be vacated and the proceedings remanded.

ADAMS, Circuit Judge (concurring).

I concur in the result reached by the majority in this matter and approve much of their reasoning. Since I was a member of the panel that heard the first *Zeiler* case, United States v. Zeiler, 427 F.2d 1305 (3d Cir. 1970), a short comment may be appropriate.

The concern expressed by the minority opinion regarding the use of photographic displays in the absence of counsel and after an accused is in custody, is one which I share. Moreover, I do not dispute that such an arrangement has a potential for error. However, because so many crimes can be proved only through the use of eye witness testimony, the admission of such evidence should not be unduly restricted. Rather such judicial policy should encourage full utilization of eye witness testimony, tested, of course, in the crucible of trial proceedings.[1]

1. Chief Justice Burger, then a member of the Court of Appeals of the District of Columbia, stated: "When an eyewitness is willing to give testimony, under oath and subject to all the rigors of cross-examination and penalties of perjury, he must be heard." Brown v. United States, 126 U.S.App.D.C. 134, 143, 375 F.2d 310, 319 (1967).

Judge Gibbons, in his dissenting opinion, has suggested that because the issue before us is whether the *Zeiler* rule is Constitutionally mandated, we need not go so far as to overrule *Zeiler's* applicability to the federal courts. Implicit in his position is that Zeiler may be preserved on the theory that it repre-

sents a valid exercise of our supervisory power. However, I believe that the Court is not completely free to adopt this reasoning, since it was emphatically rejected by the Supreme Court in Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968):

". . . We are unwilling to prohibit [the use of photographic identifications in the absence of counsel] either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement."

Furthermore, Congress enacted 18 U.S.C. § 3502 as a direct response to the *Wade* decision. Upon reading this section in a manner consistent with *Wade* so as to

The problem, as I see it, is that the facts usually presented in cases of in-custody photographic identifications fall between situations exemplified at one end of the spectrum by Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), (photographic identification at the investigatory stage), and at the other by United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), (identification at in-custody corporeal lineup). In-custody photographic displays, being neither one nor the other, present the choice whether the considerations underlying *Simmons* or *Wade* [2] are more applicable.

On reconsideration of the problem posed by *Zeiler*, I am not now convinced that the possibility for error is so great that the protections regarding such a procedure should be molded, solidified and then labelled by a Constitutional *per se* rule that a photographic identification constitutes a critical stage.[3] Nor, in my opinion, has there been a sufficient demonstration by empirical data that prosecutorial abuse of photographic displays has been so widespread that the *per se* bar advocated by the minority opinion is compelled.[4] In my judgment, the tools forged by the Supreme Court in *Simmons* would appear to be, at least at this point in time, sufficiently effective to provide the essential safeguards and yet comport with due process as implicit in our concept of ordered liberty. *See* United States v. Conway, 415 F.2d 158, 162–164 (3d Cir. 1969). To put it another way, I cannot believe that the use of a photographic display, not "impermissibly suggestive", by an eyewitness to a crime, especially when such witness is later subjected to rigorous cross-examination, runs so counter to the bedrock of our judicial process that the fairness of the resulting conviction would necessarily be vitiated.

Having altered my stance on this issue, I find myself in a similar position to that of Mr. Justice Stewart in Boys Markets, Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), and like him, find solace in the words of Mr. Justice Frankfurter: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late."

---

avoid any Constitutional infirmity, it becomes manifest that Congress was attempting to limit the use of the supervisory power in this situation. See 1968 U.S.Code Cong. & Admin. News 2139 (90th Cong. 2d Sess.).

2. Judge Gibbons indicates that considerations behind *Wade* and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), include the "combination of the suggestibility factor and familiar hearsay dangers", whereas Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), "only involves the suggestibility factor." The hearsay point was not raised and argued by the parties here, and because of the posture of this case, we need not decide it. However, I note that in *Stovall*, although the witness was permitted to testify as to both the in-court and out-of-court identifications, the Supreme Court neither addressed itself to the hearsay aspect of the out-of-court identification, nor in any way intimated that the extra-judicial identification implicated hearsay.

3. I am concerned that a logical extension of *Zeiler* would be to apply its holding to a case where the police had probable cause to make an arrest, but delayed in order to facilitate a photographic identification in the absence of counsel. Such a result might induce police to arrest suspects and have counsel appointed prior to the completion of their investigations whenever they had any doubt as to the existence of probable cause in order to arrange a photographic display that would not violate the *Zeiler* rule. A procedure such as this would seem unduly to restrict the proper investigation of crimes rather than to improve it, and might work hardship on persons who were originally suspected but later exonerated of criminal activity.

4. Indeed, the improper conduct which motivated the Court in *Zeiler* has proved to be an isolated incident rather than a general practice. *See, e. g.,* United States v. Higgins, 458 F.2d 461 (3d Cir. 1972); United States v. Bamberger, 456 F.2d 1119 (3d Cir. 1972); United States v. Medina, 455 F.2d 461 (3d Cir. 1972); *cf.* United States v. Carney, 455 F.2d 925 (3d Cir. 1972).

Henslee v. Union Planters Nat. Bank, 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259 (1949) (dissent). A change of position often brings forth comment, sometimes critical, but devotion to judicial integrity is more important, in my judgment, than the accolade of consistency.

Judge Van Dusen joins in this opinion and in the opinion of Judge Aldisert.

SEITZ, Chief Judge, concurring with whom MAX ROSENN, Circuit Judge, joins.

I agree that this case does not involve a violation of the Sixth Amendment right to counsel. Undoubtedly, desirable police practice dictates that an individual in custody be represented by counsel when his picture is included in a pre-trial photographic display. I am not prepared to say, however, that such a desirable practice takes on constitutional proportions.

Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), established that the Fifth Amendment rights of a defendant subject to an in-court identification by a witness who had selected the defendant's picture from a photographic array were adequately protected by "a course of cross-examination at trial which exposes to the jury the . . . potential for error." In reaching this decision the Court realized that "[e]ven if the police . . . follow the most correct photographic identification procedures . . there is a some danger that the witness may make an incorrect identification." Id. at 383, 88 S.Ct. at 971. Also, it understood that the potential for prejudice accruing to an accused as a result of such a misidentification was magnified because, after selecting a particular photograph, an identification witness "is apt to retain in his memory the image of the photograph rather than of the person actually seen, [thereby] reducing the trustworthiness of subsequent . . . courtroom identification." Id. Both of

these factors are inherent in photographic identification procedures, whether or not counsel is present. Yet, the Supreme Court felt that due process required only a case by case determination of the admissibility of an in-court identification which had been preceded by an uncounselled photographic identification.

The same considerations involved in the Simmons rule in a Fifth Amendment context apply to the Sixth Amendment challenge raised in this case. It is true that a defendant and his counsel are not privy to what happened at the pre-trial photographic identification. But, much if not all of what occurred can be reconstructed by appropriate discovery and through examination by defense counsel. Thus, it would appear, as was true in this case, that a defendant can obtain production of the photographs employed in the photographic identification. Compare Del.Super.Ct.Crim.R. 16(b) with F.R.Crim.P. 16(b); cf. Simmons v. United States, supra at 388; but see Jones v. State, 10 Md.App. 420, 270 A.2d 827, 830 (1971). With these photographs produced the defense then is left to concentrate largely on the manner in which they were presented to the identification witness. These circumstances do not seem so impervious to effective cross-examination to mandate automatic exclusion of the witness' in-court identification (absent independent basis) as the only acceptable solution. See Simmons v. United States, supra 390 U.S. at 384, 88 S.Ct. 967.

Indeed, if a trial court should find that a particular pretrial photographic identification violated Simmons it would be required to exclude such identification testimony unless the prosecution established according to the requisite standard that the in-court identification had a basis independent of the prior improper photographic identification. See, e. g., United States v. Sutherland, 428 F.2d 1152, 1155 (5th Cir. 1970); United States v. King, 321 F.Supp. 614, 615–616 (W.D.Tex.1970); United States v.

'Washington, 292 F.Supp. 284 (D.D.C. 1968). And, even if not excluded the identification evidence might be seriously impugned. See Simmons v. United States, supra 390 U.S. at 384, 88 S.Ct. 967. Thus, although a per se exclusionary rule under the Sixth Amendment is not adopted, I think that a defendant's basic rights in this area are adequately secured by the safeguards enunciated in *Simmons*.

HASTIE, Circuit Judge, with whom GIBBONS, Circuit Judge, joins (concurring in part and dissenting in part).

The photographic identification of appellant Reed occurred in August 1968. Since the argument of this appeal, this court has decided that the requirement of counsel at eyewitness photographic identification of persons in custody and charged with the crime in question is to be enforced prospectively from June 5, 1970. United States v. Higgins, 458 F.2d 461, decided March 28, 1972. For that reason only, I concur in the court's disposition of this appeal.

However, the majority opinion undertakes to decide "whether there should be continuing viability" to the carefully considered legal conclusion of our unanimous court less than two years ago in United States v. Zeiler, 1970, 427 F.2d 1305, 1307, that the "considerations that led the court in [United States v.] *Wade* to guarantee the right of counsel at lineups apply equally to photographic identifications [administered by public officers] after the defendant is in custody" and after a judicial officer has found probable cause to hold him for prosecution. In the view of the majority, our *Zeiler* holding does not merit "continuing viability." I disagree.

The basic constitutional right to due process of law and the generalized assurance of fair trial that it affords underlie the more particularized criminal procedural safeguards that also are set out in the Bill of Rights. Thus, when question arises concerning the reach of the right to the assistance of counsel in a particular context, a fundamental testing consideration is the need for and value of the assistance of counsel at that stage of the prosecution in order to assure fairness in the trial that will follow.

Ever since Powell v. Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, it has been recognized that the assistance of counsel for a period before trial—how long and on what occasions to be determined by the circumstances of the case —is essential to the guarantee of fair trial. Accordingly, in United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, Mr. Justice Brennan began his analysis of the right of an accused to counsel at a lineup by quoting the Sixth Amendment mandate that "the accused shall enjoy the right . . . to have the Assistance of Counsel *for his defense*" (emphasis Justice Brennan's) and, in so doing, pointed out that "this guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful 'defense.'" 388 U.S. at 225, 87 S.Ct. at 1931. He then proceeded to explain at length why the Court believed that, to assure a meaningful defense, one accused of and judicially charged with an offense needed the assistance of counsel whenever he should be exhibited to an eyewitness of the alleged crime with a view to his identification as a participant in the wrongdoing. 388 U.S. at 228–236, 87 S.Ct. 1926.

In the companion case of Gilbert v. California, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, the Court held that one essential remedy for the failure of the prosecutor or the police to enable the accused to have the assistance of counsel at a pre-trial lineup is the exclusion from the prosecution's case of evidence that an eyewitness had identified the accused in an uncounseled lineup. Thereafter, in United States v. Zeiler, *supra*, we held that in logic the same considerations and the same exclusionary rule applied to evidence that, in the absence of defense counsel, an eyewitness had identified the accused from a photo-

graph or photographs exhibited to him by the police or the prosecutor.

By majority vote of its entire membership this court is now overruling that decision. In so doing, the court does not seem to challenge the need of the accused for the assistance of counsel on an occasion arranged by the government for purposes of eyewitness identification or the value of such assistance in facilitating the subsequent fair trial of the issue of identification before a judge and a jury. Nor is it urged or in any way demonstrated that the need for or the value of such assistance is less when identification is made from photographs than when it is made during a corporeal lineup.

Rather, the majority opinion focuses upon the distinction that the accused himself is present at a corporeal lineup but absent from a photographic exhibition. In *Zeiler* we pointed out that this distinction, if significant at all, only makes the need for counsel even greater at a photographic identification than at a lineup. For at least the accused, because of his presence, has some knowledge of what happens at a lineup. In contrast, the defense must depend entirely upon the officials who exhibited the photographs or other prosecution witnesses for evidence of what happened at an uncounseled photographic identification. True, the photographs allegedly used at the pre-trial identification may be available at trial. However, only persons present at the identification would know how the photographs were exhibited and what was said on that occasion. But apart from this consideration, it is difficult to see why this distinction should lead to an opposite conclusion as to the right to counsel.

In the view of the majority the key legal concept is "confrontation," its presence in lineup cases and its absence in photographic identification.[1] But in neither situation is the accused complaining of any denial of his constitutional right to be confronted by the witnesses against him.[2] Why then should the occurrence or the absence of a physical confrontation make any difference in deciding whether the accused is entitled to the assistance of counsel on an occasion arranged by his accusers for the accomplishment of eyewitness identification?

The majority opinion points out that in *Wade* Mr. Justice Brennan repeatedly characterized a lineup as a "confrontation." Therefore, the majority reasons, the Court was treating the physical confrontation of accused and witness as the circumstance that made a lineup a "critical stage" of the prosecution and thus entitled the accused to the assistance of counsel. But if this had been what made the lineup a critical stage of prosecution, it is hard to believe that the court would not have made explicit and would not have undertaken to justify so important a conclusion. Instead, as already pointed out, the Court devoted eight pages in its opinion, 388 U.S. at 228–236, 87 S.Ct. 1926, to a demonstration of the decisive impact of eyewitness identification and the great danger of misidentification as the factors that made this a critical stage of the criminal proceeding. Moreover, Mr. Justice Brennan referred early in his opinion to Powell v. Alabama, *supra,* as establishing the right to the assistance of counsel to the extent needed before trial for proper preparation of whatever defense the accused might have. Obviously, such preparation will rarely involve "confrontation."[3] The occasion

1. This analysis was suggested by Circuit Judge, now Chief Judge Friendly, United States v. Bennett, 2d Cir. 1969, 409 F.2d 899. Other courts have followed Judge Friendly's distinguished leadership without critical comment. United States v. Serio, 6th Cir. 1971, 440 F.2d 827; United States v. Long, 8th Cir. 1971, 449 F. 2d 288; United States v. Williams, 9th Cir. 1970, 436 F.2d 1166.

2. This is not to deny that an offer of hearsay evidence of a pretrial uncounseled photographic identification might create a problem under the confrontation clause.

3. This right to counsel for pre-trial preparation makes unpersuasive the majority statement that no critical stage has been found to exist "requiring the assistance

of a prosecution supervised photographic identification is simply one of the pretrial situations in which the need for the assistance of counsel is very great.

The contention that physical "confrontation" is a measure of "critical stage" of prosecution in the present context can be tested impressively by stating certain facts of a recent case. In United States v. Collins, 4th Cir. 1969, 416 F.2d 696, an accused prisoner was required to stand with others in a lineup in order that eyewitnesses to the crime might attempt an identification. One eyewitness did not attend this viewing. However, the police photographed the lineup and later showed that picture to the absent eyewitness. Let us assume that counsel for the accused was not notified of or in attendance at either the lineup or the subsequent exhibition of a photograph of the lineup.[4] *Wade* and *Gilbert* would prohibit the prosecution from using as evidence the fact that one eyewitness had identified the accused at the uncounseled lineup. Today's decision would permit testimony that a second eyewitness had identified the accused at a showing of a photograph of that lineup. In logic and in fairness, I do not see how those opposite conclusions can stand together. Yet, such is the result of relying upon physical "confrontation" as the touchstone of this problem. Indeed, under the majority view, the police could make *Wade* and *Gilbert* wholly ineffective merely by conducting lineups without the attendance of either witnesses or counsel, photographing the lineups and thereafter, at convenience, exhibiting the photographs to eyewitnesses in the absence of the accused and counsel. To me, the conclusion is inescapable that the *Wade* and *Gilbert* rationale should control both corporeal viewings and photographic exhibitions or neither.[5]

Apart from analogy to *Wade* and *Gilbert* and from considerations of fairness to the accused, the majority opinion also expresses concern that a requirement of counsel at photographic identifications might at times be impracticable or at least would impose undue burdens upon investigators and prosecutors. This view is supported by reference to and lengthy quotation from a brief filed *amicus curiae* in this case by state and local prosecutors who view the *Zeiler* rule with alarm. However, the principal example cited in that brief to show the intolerable consequences of *Zeiler* gives *Zeiler* much broader application than this court intended. We spoke in *Zeiler* of the right of a defendant "in custody" to the assistance of counsel at a photographic identification. We intended, as we think the context shows, to extend the rule only to those defendants who had been charged with the crime in question and thus were being held for further prosecution.

The example cited is a serious prison riot that occurred in Philadelphia in 1970. The brief states that "[i]n order to assure fairness, some twenty books containing the photographs of every person present at the riot scene (several hundred in all) were prepared and given to twenty detectives who in turn interviewed each of the possible witnesses—guards and prisoners alike—to put together information, which would help to reconstruct the events of the riot and, eventually, *to form the basis for charges against those responsible*." (Emphasis added). This then on its face was a case of using photographic identification as a proper tool of preliminary investigation in order to determine which prisoners should be charged with the crime in question. No riot connected charge had yet been lodged against any prisoner.

of counsel in a factual setting where the accused was not physically present. . ."

4. Only in this respect do the stated facts differ from those of the *Collins* case. There counsel attended the lineup but was not informed of the subsequent exhibition of the photograph of the lineup to another witness.

5. While the *Wade* majority do not discuss the application of the doctrine of the case to photographic identification, the dissenters point out that in logic it does apply. 388 U.S. 250–251, 87 S.Ct. 1926.

No magistrate had found probable cause to prosecute any individual. Not only had prosecution for rioting not reached a "critical stage," prosecution had not even begun.

The brief also suggests that the *Zeiler* rule is impracticable where eyewitnesses to the alleged crime have scattered to various places far from the place where the prisoner is confined, has been charged and is represented by counsel. It may be onerous to require counsel representing an impecunious defendant to travel around the country to be present at showings of his client's picture to such witnesses. But, in *Wade,* Mr. Justice Brennan anticipated this difficulty and suggested that it could be surmounted by "substitute counsel" designated for the limited purpose of representation at the showing of photographs. In these days when criminal-defender organizations abound and the bar generally is increasingly sensitive to its obligation to assist in the defense of persons charged with crime, the recruitment and assignment of substitute counsel for this limited purpose will rarely be difficult or burdensome.

Next, it is suggested that fairly often it is desirable to check the possible connection of a person, who has been arrested and charged for one offense, with similar crimes committed at other times and places. To that end, it frequently is worthwhile to exhibit photographs of the prisoner to numerous widely dispersed eyewitnesses of other crimes. But here, as in the case of the riot already discussed, the prisoner is not yet being prosecuted for any of these similar crimes. The *Zeiler* rule is inapplicable to such photographic exhibition during investigation preliminary to possible charging. Thus, the *Zeiler* rule, as intended by this court and explained in this opinion, would not impose any of the hardships feared and contemplated by the *amici curiae.*

Finally, the alleged hardship of the *Zeiler* rule is minimized by the fact that the prosecution will rarely have serious need to use the fact that an eyewitness made a pre-trial photographic identification as an important part of its case against the accused. For ordinarily the eyewitness will be available to attempt a much more satisfactory face to face identification at trial. Occasionally an important eyewitness will have died before trial. More rarely, the accused may have been identified by photograph shortly after the alleged crime but have changed in appearance so greatly since that time that he is unrecognizable at trial.[6] In these unusual situations where the prosecution's case really turns on evidence of pre-trial photographic identification the preservation of the *Zeiler* rule would afford the accused just and reasonable protection against the inherent grave risk of mistake in eyewitness identification that Mr. Justice Brennan elaborated in his *Wade* opinion without imposing an unreasonable burden on the government.[7]

For these reasons, the rule of the *Zeiler* case should be reaffirmed,[8] though its restriction to identification made after its announcement would require a rever-

6. See United States v. Collins, *supra.*

7. Two judges who joined in the *Zeiler* decision now join in overruling it. In a concurring opinion they explain that their change of opinion has been caused by a reweighing of underlying policy considerations. But the policy considerations that in the Supreme Court's view required *Wade* and *Gilbert* have equal force here. And we are obligated to treat *Wade* and *Gilbert* as authoritative. Therefore, if those decisions do not control this case it must be, not because we think the policy underlying them is unsound, but because a photographic identification of an incarcerated accused, different from his identification at a lineup, is not a critical stage of prosecution. The majority opinion recognizes that this distinction must be validated if *Zeiler* is to be overruled. The concurring opinion does not mention this issue, much less contribute to its resolution.

8. Since the argument of this appeal the Court of Appeals for the District of Columbia Circuit, by a majority vote of the court sitting en banc, has adopted the *Zeiler* rule. United States v. Ash, decided March 1, 1972, 461 F.2d 92.

sal of the district court's decision in this case.

GIBBONS, Circuit Judge, dissenting in part with whom HASTIE, Circuit Judge, joins.

I concur in Judge Hastie's opinion. Because it seems to me that discussion of the problem of United States v. Wade, 388 U.S. 218, 87 S.Ct.. 1926, 18 L.Ed.2d 1149 (1967), Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178 (1967) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), in terms of "confrontation" and "critical stage" has been the source of some confusion to bar and bench alike, I add some thoughts of my own. These probably will compound rather than dispel the confusion, but in any event I will try.

In the *Wade-Gilbert-Stovall* trilogy the Supreme Court deals with two separate evidence problems. The first is the inherent suggestibility and hence inherent unreliability of eyewitness identifications. The second is the hearsay problem of the use of a prior out-of-court statement—the prior identification—for the truth of the matter asserted. *Stovall* only involves the suggestibility factor. *Wade* and *Gilbert* involve the combination of the suggestibility factor and familiar hearsay dangers. In *Wade,* prior lineup identification was elicited from witnesses on cross-examination in an attempt to impeach their credibility. 388 U.S. at 220, 87 S.Ct. 1926. In *Gilbert,* as here, the local law of evidence permitted the use of the prior out-of-court identification for the truth of the matter asserted. 388 U.S. at 272, n. 3, 87 S.Ct. 1951. The Supreme Court found that the combined dangers were just too much for use in a criminal trial unless the additional safeguard to reliability of presence of counsel was added. The semantic route which the Supreme Court took in arriving at the judgment that this result is constitutionally mandated now tends to obscure the fundamental reasons for the rule. *Wade* is an exclusionary rule

directly related to reliability of the evidence, and hence to the integrity of the fact finding process. This is not a prophylactic rule. *Compare, e. g.* Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

I agree with Judge Hastie that it is impossible to distinguish the photographic identification problem from the corporeal identification problem. The use of a prior photographic identification for the truth of the matter asserted combines the same elements of possible unreliability as does the use of prior corporeal identification.

Moreover, some language in Judge Aldisert's opinion goes much further in authorizing use of prior photographic identifications for the truth of the matter asserted than I think appropriate. This is a state habeas corpus case. Thus it presents only the issue whether the rule of United States v. Zeiler, 427 F.2d 1305 (3d Cir. 1970) is constitutionally mandated, and thus binding on the state courts. *Zeiler* was a federal prosecution. There is no need, in this case, to overrule *Zeiler's* application in the United States District Courts. Indeed I believe that use by the Government of a prior identification for the truth of the matter asserted violates the rule of evidence which we held to be applicable for the federal courts under our supervision in United States v. Small, 443 F.2d 497 (3d Cir. 1971). *See also* United States v. Schwartz, 390 F.2d 1 (3d Cir. 1968); Government of Virgin Islands v. Pondt, 456 F.2d 679 (3d Cir., filed 1972). Because of the hearsay dangers discussed by Judge Rosenn in United States v. Small, *supra,* I would not permit the Government to use a prior identification for the truth of the matter asserted. The prior identification or failure to identify would, of course, be available for impeaching purposes. Nothing in Title II, § 701(a) of the Omnibus Crime Control and Safe Streets Act of 1968, P.L. 90–351, 18 U.S.C. § 3502, purports to prevent us from excluding affirmative use of out-of-court identifications.