Gregory S. CRAWLEY, Appellant,

v.

UNITED STATES, Appellee.

Annie R. POLLARD, Appellant,

v.

UNITED STATES, Appellee.

No. 7534.

District of Columbia Court of Appeals.

Argued Feb. 14, 1974.

Decided Dec. 2, 1974.

---

Stuart F. Johnson, Washington, D. C., appointed by the court, for appellant Crawley.

Frederick H. Weisberg, Washington, D. C., appointed by the court, for appellant Pollard. Gail P. Higgins, Washington, D. C., also appointed by the court, entered an appearance for appellant Pollard.

Regina C. McGranery, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Henry F. Schuelke, III, Asst. U. S. Attys, were on the brief, for appellee.

Before KELLY, NEBEKER and PAIR *, Associate Judges.

KELLY, Associate Judge:

Appellants were convicted by a jury of two counts of armed robbery (D.C.Code 1973, §§ 22–2901, 22–3202). Appellant Crawley claims reversible error in the denial of his motion to suppress pretrial identifications. Appellant Pollard argues that the trial court abused its discretion (1) in allowing the prosecutor to cross-examine codefendant Crawley and his alibi witness about her prior relationship with Crawley, and (2) in refusing to grant a severance. We affirm.

Late in the evening of December 23, 1972 while Rudolph Sullivan, owner, of the Little Palace Barber Shop, was visiting with his friend Bravie Lee, appellant Pollard, known to both men since childhood, came into the shop and asked them for some money. She left quietly when they said they had none, but returned about a half hour later in the company of a male stranger. Within minutes of their arrival the stranger pulled out a gun, pointed it at Lee and Sullivan, and demanded money. Appellant Pollard searched through the men's pockets, removing both money and keys; however, at Sullivan's request Pollard and her friend left the keys behind when they departed.

At the suppression hearing Sullivan testified that while he was facing the wall during most of the robbery, he did describe the male robber to the police as a short, dark-skinned Negro of solid build, weighing between 140 and 150 pounds and wearing a "medium bush". Lee could not recall the description he gave the police, but said that the robber had a dark complexion, was 5' tall or over, and weighed between 180 and 190 pounds.

When Sullivan learned from his barber shop customers that appellant Pollard went with a man called "Greg" he so notified Detective Michael D. McCoy, Jr. of the Metropolitan Police Department robbery squad. Upon investigation McCoy discovered that Greg's last name was Crawley. He then included Crawley's photograph in an array with nine others shown to Sullivan late in January 1973, telling Sullivan, without indicating which one, that Greg's picture was one of the ten. Sullivan picked out photographs of two men whom he thought resembled the robber. He later testified that, while the robber had not worn his hair parted on the night of the robbery, he chose the photograph of a man with the parted hair (Crawley) because he had seen him with appellant Pollard at an

earlier time when he wore a part in his hair.

Sullivan failed to identify Crawley at a subsequent lineup because he was looking for a man with parted hair. He did positively identify Crawley at trial. Bravie Lee was not shown the photographic array; however, he identified Crawley in the lineup and again, positively, in court.

The trial court denied the motion to suppress Lee's identification of Crawley, there being no question of suggestivity with respect thereto at all. Similarly it found there could be no suggestivity in Sullivan's purported pretrial identification since he had selected not one, but two photographs from the array shown him by McCoy, and had failed completely to identify Crawley at the lineup.

Appellant Pollard did not testify at trial. Crawley's testimony was in aid of his defense of alibi and was supported by that of his mother and of his sister. It was during the cross-examination of Crawley's sister that the subject of appellant Pollard's relationship with Crawley was raised. The trial court refused to proscribe counsel's probing this area of examination and, in denying Pollard's motion for severance stated, in part:

> Now, if there is some sort of a relationship this makes between your client and Mr. Crawley, then I can't change the facts of the case. It's not within my purview to do that. If she lived at this house, then so be it: She lived at this house, and that's all there is to it.

Crawley also testified that appellant Pollard was his girl friend and that she stayed with him on occasion.

## I

■ Appellant Crawley's claim that the trial court erred in denying his motion to suppress the photographic and lineup identifications has little merit. It is true that Officer McCoy told Sullivan that Greg's picture was among the ten photographs shown him and that only one of the pictures in the array was of a man with a part in his hair. The fact remains, however, that Sullivan chose from the array two photographs of men whom he thought resembled the robber. Thus, as the trial court noted, if this procedure was at all suggestive, the suggestion was clearly ineffective both at that time and in the subsequent lineup, for there Sullivan failed to identify appellant Crawley at all. Accordingly, there is no basis to hold that the identification procedures followed in this case were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification". Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

## II

■ Appellant Pollard complains of the trial court's failure to sustain her objection to allegedly prejudicial cross-examination, and to thereafter grant a severance, for the purported reason that Crawley's alibi defense was completely antagonistic to her "innocent presence" theory of the case. She recognizes that both rulings concerned matters within the court's discretion,[1] but urges that to her prejudice the cross-examination went well beyond the matters inquired into on direct As we have noted, however, appellant Pollard presented no testimony at trial. And the defense which she sought to advance; viz., that she was innocently present in the barbershop at the time and was forced by Crawley to participate in the robbery, had no foundation either in the government's evidence or that of her codefendant Crawley. Accordingly, since the admission of evidence concerning a close relationship between the two accused robbers was clearly relevant to Crawley's defense of alibi and mistaken identity, and since there was no conflict in defenses, no purpose was to be served by a severance.

Affirmed.

1. Shuman v. United States, D.C.App., 243 A. 2d 900 (1968) (cross-examination) ; United States v. Gambrill, 146 U.S.App.D.C. 72, 449 F.2d 1148 (1971) (severance).