Clyde R. THOMAS, a/k/a Reginald Thomas, Appellant,

v.

UNITED STATES, Appellee.

No. 11113.

District of Columbia Court of Appeals.

Argued Oct. 19, 1977.

Decided Jan. 19, 1978.

John Z. Noyes, Washington, D. C., appointed by this court, for appellant.

Larry G. Whitney, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, and John W. Polk, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY and FERREN, Associate Judges, and PAIR, Associate Judge, Retired.

1. D.C.Code 1973, § 22–1801(b).

2. D.C.Code 1973, § 22–2201.

3. Appellant was sentenced to imprisonment for consecutive terms of from two to fifteen years

PAIR, Associate Judge, Retired:

Appellant is one of three persons found guilty by a jury of burglary [1] and larceny.[2] In this appeal he claims as error the trial court's refusal to suppress identification testimony, and its imposition of maximum sentences for the two offenses.[3] Finding, after our review, no error requiring reversal, we affirm.

The scene of the burglary and larceny was the Exxon Service Station at 10th Street and Michigan Avenue, N.E. One William Yarbaugh was an eyewitness to the commission of the offenses. At the suppression hearing, there was testimony substantially as follows:

On August 1, 1975, about 12:05 a. m., William Yarbaugh (the witness) was talking by telephone to his girlfriend from a booth adjacent to a Gulf Service Station at 10th Street and Michigan Avenue, N.E. Across the street from the Gulf station and approximately 100 feet from the telephone booth was an Exxon Service Station. From the vantage point of the telephone booth and aided by street lights and the lights at the two service stations, the witness had a clear and unobstructed view of the service bay doors of the Exxon station.

As the witness continued his conversation with his girlfriend, he observed an automobile enter the driveway of the Exxon station and stop at the front of the doors in the service bay. The witness next heard the sound of breaking glass as an object was thrown from the automobile through one of the glass panes in the door. Apparently the witness was then observed, because the automobile was turned suddenly, crossed the street, and stopped within "arm's length" of the telephone booth. According to the witness, the following then transpired:

One of them [later identified as co-defendant Battle] got out of the car, and asked me, did I see him. I said, ' "Yeh," '

and from forty months to ten years respectively, such sentences to run consecutively to any other sentence then being served. The two codefendants, Yvon Battle and Bertram Stevens, did not appeal their convictions.

and I believe he asked me, was I going to do anything. I said, ' "Go ahead and do what you want to do." '

During this exchange, a second man, later identified as codefendant Stevens, got out of the automobile and stood near it for about a minute. The two men then walked across the street to the Exxon station, leaving the automobile and its driver (later identified as appellant) seated behind the wheel. Although the driver did not leave the automobile, the witness was able to observe from a distance of two or three feet the driver's profile.

Reaching through the broken glass in the bay door, one of the two men opened the door, after which the two of them entered the service area of the Exxon station. After about five or six minutes they emerged, each carrying automobile tires, and proceeded toward the rear of the station. But the criminal enterprise was suddenly interrupted by an off-duty police officer; and the two men dropped the tires, ran, and were picked up by the driver of the automobile,[4] which immediately sped away.

Based upon information furnished by the witness and by the off-duty police officer, appellant and his three companions were apprehended about one hour later. It is conceded that the automobile operated by the appellant at the time of the arrest was the same automobile which sped from the scene of the burglary and larceny.

At a lineup about a week later, the witness identified codefendant Battle as one of the men involved in the crimes. Appellant and codefendant Stevens were also in the lineup, but the witness did not identify either of them. However, after the lineup, the witness explained to one of the police officers that he recognized Battle, because "he was the one that came up to my face" at the telephone booth, and that the driver and the other man, he ". . . started remembering . . ." after he got outside.

A few days later the police officer came to the home of the witness and exhibited a photograph of the lineup. The witness then identified codefendant Stevens as the second man who got out of the automobile at the telephone booth and later walked across the street to the Exxon station. The witness also made a tentative identification of the driver of the automobile, but still was not certain.

Some months later and in connection with the prosecution's preparation for trial, the witness was shown an enlarged photograph of the lineup; and he made a positive identification of appellant as the driver of the automobile which was left standing near the telephone booth during the criminal activity. Over the objection of appellant's counsel, the witness made in-court identifications of appellant as the driver of the automobile and his codefendants.

Ruling that it found no suggestivity in any of the pretrial identification procedures, the trial court denied the motion to suppress. The case then proceeded to trial, which resulted in jury verdicts of guilty as charged.

Appellant contends, first, that the denial of the motion to suppress identification testimony was error requiring reversal. His argument seems to be that because the witness was unable to identify appellant at the lineup, the exhibition of a photograph of that lineup was so impermissibly suggestive as to irreparably taint the pretrial identification and require the exclusion of any court identification.

In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), one of the leading cases on pretrial photographic identification, the Supreme Court recognized the risks inherent in such confrontations, but nonetheless expressed approval of their wide and effective use in law enforcement. Stating its unwillingness to prohibit the employment of pretrial identification by photograph, the Court said that a claim of prejudice as a result of

---

4. The automobile was described to the police as a "dark . . . color convertible . . . sort of beat up."

allegedly defective identification procedures must be evaluated in light of the "totality of the surrounding circumstances." After noting that "each case must be considered on its own facts," the Court held that a conviction based on eyewitness identification at trial following a pretrial identification will be set aside only if the pretrial identification was "so impermissibly suggestive" as to give rise to a very "substantial likelihood of irreparable misidentification." *See also Anderson v. United States,* D.C.App., 364 A.2d 143 (1976); *United States v. Brown,* 149 U.S.App.D.C. 43, 461 F.2d 134 (1972) (en banc).

■ Here, appellant makes no contention that the lineup was improper or that the photograph of the lineup was impermissibly suggestive. Consequently, the photograph was unassailable absent a showing of some infirmity in its exhibition to the witness. *See United States v. King,* 149 U.S.App. D.C. 61, 461 F.2d 152 (1972). We have found no record showing of any such infirmity in the exhibition of the photograph. What appellant urges in this connection is that the exhibition of the photograph to the witness in the office of the prosecutor was in effect a lineup at which he was denied his Sixth Amendment right to counsel. We brush this argument aside as frivolous, because the Supreme Court has settled the law on the subject, saying in *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973):

> We hold, then, that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender. [*Id.* at 321, 93 S.Ct. at 2579.]

The Court made clear in *Simmons v. United States, supra,* that only due process issues are involved where the police problem is one of obtaining, by photographic confrontation, leads to suspects of criminal activity. *See Clemons v. United States,* 133 U.S.App.D.C. 27, 34, 408 F.2d 1230, 1237 (1968) (en banc), *cert. denied,* 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969); *United*

*States v. Brown, supra. See also* Annot., *Admissibility of Evidence of Photographic Identification,* 39 A.L.R.3d 1000 (1971).

Thus the concern of the trial court at the suppression hearing was whether there had been any violation of due process in the manner in which the photograph was exhibited and whether the identification obtained was suggested. *Simmons v. United States, supra.* Certainly there was no inherent impropriety in the exhibition of the photograph in the office of the prosecutor, and appellant has made no showing whatsoever that the identification was suggested by either the police officer or the prosecutor. It is not enough, therefore, for appellant to urge, as he does, without record support, that the photographic identification was the product of prosecutorial misconduct.

■ Absent any showing that the photographic confrontation was unnecessarily suggestive, it must follow that there was no substantial likelihood of irreparable misidentification. *Simmons v. United States, supra. See also Neil v. Biggers,* 409 U.S. 188, 196, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In the latter case, a victim of rape was unable to make an identification from photographs. Thereafter a stationhouse showup was arranged and the victim made an identification of the offender. The Court said that while the stationhouse showup may have been suggestive, under the totality of the circumstances the victim's identification was reliable. *See and compare Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

Here, as in *Biggers,* the witness made no identification at the lineup, or at the first photographic confrontation. Consequently, the witness gave every indication of reliability, having resisted any suggestiveness which may have inhered in the lineup on the first photographic confrontation. *Anderson v. United States, supra; Crawley v. United States,* D.C.App., 328 A.2d 777 (1974).

A case in point is *United States v. Brown, supra.* There, the witness to a felony murder was shown photographs on four separate occasions, but was unable to identify the criminals and was unable to make an identification at a lineup four months after the crime. Some seven months later when shown a photograph of the lineup, the witness identified the two criminals. The trial court suppressed the in-court identification and the Court of Appeals, sitting en banc, reversed, holding that where defendants were represented by counsel at the lineup and there was no suggestivity in the photograph of the lineup, or in the manner of its exhibition, it was error to suppress the identification.

■ Appellant claims that at the suppression hearing he was wrongfully precluded from eliciting from the witness the description of appellant given the police. The record discloses no such inquiry of the witness by appellant's counsel. What appears is that during cross-examination of the witness by counsel for one of the codefendants, there was the following colloquy:

[Counsel for codefendant Battle]

Q. What was the description that you gave to the officer the first time you talked with him?[5]

A. First officer—

THE COURT: What does that have to do with identification? We are only here on identification that has either been made suggestive or improper identification, participated in by the police. This is not cross-examination at trial. I don't care what description he first gave the officers unless you can show that the officers suggested an identification to him. I want this issue narrowed. We are directly concerned with the motion to suppress identification. I am not going to allow you all to cross-examine and

cross-examine on matters that have nothing to do with the motion.

At the same time the ruling was made, appellant's counsel did not join in any objection to the ruling, nor did he, when allowed to cross-examine the witness, even attempt to extract testimony as to any specific description of appellant that may have been given to the police. However, we find it difficult to understand the logic of the court's ruling. Certainly, if the witness had given the police a description of the appellant which varied substantially from his actual appearance, it would have cast serious doubt on the reliability of the photographic identification, and may have given rise to a likelihood of irreparable misidentification. *See Simmons v. United States, supra; Neil v. Biggers, supra.* In any event, because appellant's counsel has now conceded that the witness " . . . gave the police no description whatsoever of the driver of the automobile," we hold that the error, if any, was harmless.

■ Appellant contends nevertheless that the in-court identification should not have been permitted, because it had no source independent of the enlarged photograph. But the government did not attempt to bolster its case by testimony concerning the photographic identification.[6] Consequently, even if that identification was tainted by impermissible suggestivity, reversal would not be required if there was an independent source for the in-court identification. *See* Nathan R. Sobel, Eye-Witness Identification (§ 29, Ch. 4, 1972). *Cf. United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

---

5. During his cross-examination of the witness, counsel's concern was the description given the police of his client, Battle.

6. The per se exclusionary rule of *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), applies only when the government introduces at trial evidence of a

tainted pretrial identification. That rule, however, has since been modified by the holding in *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), where the Court concluded that " . . . reliability is the linchpin in determining the admissibility . . . ." of a tainted pretrial identification.

■ Of course, the simple fact is that the trial court found at the suppression hearing by clear and convincing evidence that no unnecessary or impermissible suggestivity infected the photographic identification. *See Neil v. Biggers, supra; United States v. Brown, supra.* Moreover, in ruling on the motion for a judgment of acquittal, the trial court found, consistent with *Clemons v. United States, supra,* 133 U.S.App.D.C. at 34, 47, 408 F.2d at 1237, 1250, that there was an independent source for the in-court identification. In our view there was a sound basis in the evidence for the finding. From a distance of a few feet, the witness viewed for approximately five minutes the profile of appellant as his codefendants burglarized the gasoline station. Under the circumstances, the court could have concluded that the identification was based upon observation from the telephone booth rather than the photograph of the lineup, and thus properly permitted the jury to consider it. *See Manson v. Brathwaite,* 423 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), and *Anderson v. United States, supra.*

The identification testimony was, of course, only evidence; and since, at trial, the right of cross-examination was preserved, we hold that there was no due process violation requiring reversal. *Simmons v. United States, supra; Neil v. Biggers, supra.*

■ As his final claim of error, appellant challenges the maximum sentences imposed. It is, however, conceded that the sentences are within statutory limits, and it is so well settled as to hardly require the citation of authority that, without more, we will not review such sentences. *See Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); *Foster v. United States,* D.C.App., 290 A.2d 176 (1972).

*Affirmed.*